ANDREW N. KAUS, Plaintiff and Appellee, v. GLEN M. GRA-
    CEY and The First State Bank of Holstein, Iowa, De-
    fendants and Appellants.

**Duress:** ASSIGNMENT OF INSURANCE POLICY: EVIDENCE.   Threats re-
    lating to personal liberty or safety likely to oppress the person or
    deprive him of the free exercise of his will and prevent that meet-
    ing of minds necessary to a valid contract constitute duress.   In the
    instant case the evidence is held to require submission of the ques-
    tion of whether the assignment of an accident insurance policy was
    obtained by duress, thus rendering it void.

**Same:** AGENCY: ACTS OF AGENT.   Where a creditor of the insured rep-
    resented to insured's brother that the indebtedness was for money
    obtained by false pretense and unless he assigned his policy to
    secure the same it would be sued, and he requested the brother to
    procure the assignment, which he did, an agency was thereby
    created and the creditor was bound by the statements and repre-
    sentations of the brother amounting to fraud or duress which in-
    duced the assignment.

**Same:** ASSIGNMENT OF INSURANCE: CONSIDERATION.   A pre-existing
    indebtedness is a sufficient consideration for the assignment of an
    insurance policy, when obtained without fraud or duress.

**Instructions:** REFUSAL OF REQUESTS.   The refusal of requested instruc-
    tions substantially covered by those given by the court is not
    erroneous.

**Pleadings:** REPLY: ELECTION.   Where defendants pleaded the assign-
    ment of a policy of insurance in defense to an action to recover
    possession of the policy, and plaintiff replied in two counts, one
    pleading duress and the other want of consideration for the assign-
    ment, refusal to strike the second count because failing to admit
    the execution of the assignment was not erroneous; nor could plain-
    tiff be required to elect on which count of the reply he would rely.

*Appeal from Ida District Court.*—HON. M. E. HUTCHINSON,
                            Judge.

MONDAY, DECEMBER 15, 1913.

ACTION at law to recover possession of an accident insurance policy. From a verdict and judgment in favor of plaintiff, this appeal is taken.—*Affirmed.*

*J. B. Tourgee* and *Johnston Bros.,* for appellants.

*J. C. Walter,* for appellee.

WITHROW, J.—I. Andrew N. Kaus, on July 15, 1911, was the holder and owner of a policy of insurance or indemnity in the Woodman Accident Association, of Lincoln, Neb., under which in the event of accident resulting in injury he became entitled to benefits of $12 per week, for a period of not to exceed one hundred and four weeks for immediate, continuous, and total disability. On the 13th day of July, 1911, Kaus sustained an injury resulting in a broken back, paralysis of the legs, and cuts and bruises upon his body. He was removed to a hospital for treatment. At the time of his injuries Kaus was indebted to the First State Bank of Holstein, Iowa, and, as appears from the evidence, was practically without means or property to pay or secure the indebtedness. From the evidence it appears that it was considered by the relatives of Kaus, and also by Glen M. Gracey, cashier of the Holstein Bank, that the injuries were of such nature as to likely result in death or disability, in either of which events his earning capacity was gone. In order to secure the bank for its indebtedness, Gracey took steps to procure an assignment of the accident policy, and, after negotiations which were conducted through the agency or assistance of John Kaus, brother of Andrew N. Kaus, the latter with his wife signed a paper, in terms an assignment, which is the reliance of the defendants, who are the appellants. On October 11, 1911, this action was commenced by Andrew N. Kaus, claiming to be the owner of the policy and entitled

to its possession, Gracey and the bank being made defendants, alleging that the assignment was procured by threats of prosecution, which induced fear and caused duress, under which condition he then acted, and that as a result of such the pretended assignment was null and void. For their answer the defendants pleaded the assignment, and denied that it was procured by threats, and denied that Kaus was under duress at the time of signing it. The plaintiff in reply pleaded duress and want of consideration. There was a trial to a jury resulting in a verdict for the plaintiff, and the defendants appeal.

II. Many assignments of error are made, of which but three have been argued. These we will notice. It is claimed that the motion of the defendants for a directed verdict should have been sustained, on the ground

1. DURESS: assignment of insurance policy: evidence.

that the evidence failed to show that the assignment was executed under duress. We must therefore consider the substance of the evidence to determine the facts, either admitted or in dispute, and from such ascertain whether under the law there were such facts tending to show legal liability as required the submission of the case to the jury.

John Kaus testified that Mr. Gracey, the cashier, asked him if he would take the assignment, which had been prepared, and have it signed by his brother. John Kaus further testified that Gracey told him his brother owed $1,200 to the bank, and that it had no protection; that the money was procured by his brother under false pretenses; and that it was a penitentiary act, and if it was not secured the bank would sue. John Kaus further testified that he took the paper, went to the hospital, where his brother was in bed, and talked with him about the assignment. His brother at first refused to sign it, said he would not, and John Kaus then told him what Gracey had said about obtaining the money under false pretenses, that such was a penitentiary offense, and also what Gracey had said about suing if it

were not signed. The brother further testified: ''I handed the paper to him, and it kind of scared him, I guess. He didn't have a lead pencil, and I finally found one. He had the paper in his hand and dropped it and shut his eyes. I talked to him again and told him again he had better sign it. After he had signed it, the paper fell out of his hand and dropped on the cover. I picked it up and told his wife to sign it.''

The deposition of Andrew N. Kaus, who has since died of his injuries, was taken and used on the trial. He testified:

The reason why I made the assignment was that my brother, John Kaus, came up there to the hospital and brought an assignment for me to sign. He told me Gracey wanted me to sign over $1,000 from said policy, and I at first would not sign. Then he told me that Gracey had said I received money on false pretenses from the First State Bank of Holstein, Iowa, and said it was a penitentiary act and for me to sign that assignment, and said if I didn't sign that, that they would probably send me to the penitentiary. John wanted me to sign the paper, and I wouldn't do it, but threw the paper on the floor, and he picked it up and handed it back to me and I told him that I was not able to sign anything at that time. John said he thought it best for me to sign it because it might give him a bad name, otherwise I would have to go to law. I then signed the assignment. Gracey had told him I had better sign it because I did not expect to live long, and I did not care what I did.

The evidence shows that Kaus was restless and suffering from pain at the time, and that, to alleviate his suffering, which had been continuous from the time of his injury, morphine had been administered by his attending physician, the last, previous to the transaction in question, having been given at 3 o'clock a. m.

The wife of Andrew N. Kaus, who was at the hospital and in the room at the time the assignment was presented to her husband for signature, testified that during the time her husband was restless and hot, and that she did not re-

member seeing him open his eyes. He said but little, but complained of pain. When John wanted him to sign the paper, he threw himself back and shut his eyes.

Glen M. Gracey, one of the defendants, testified that he had talked with John Kaus in regard to the policy on July 14th, and on the 15th, the day the assignment was executed, John Kaus and another brother came into the bank. As to what then occurred, he testified:

I then explained to them from the beginning our dealings with Andrew Kaus. I told them we didn't want to do anything but what was absolutely square, that we had carried Andrew along thus far, and since we had done this that I thought we should have a fair return. Told them about what Andrew had done in June. Andrew told me that he had hogs on feed. I told him that he should put no. mortgage on any of his hogs. I told them that I had told Andrew that I knew that the other bank had a mortgage on his cattle. He had asked me for money on cattle and I wouldn't loan it to him. I took his word for the number of hogs that he had. I told John Kaus I knew the financial condition of his brother Andrew, and I said we haven't any security, and we were surprised to know the condition he was in. The only thing that he has left is the accident insurance. I told John that his brother Andrew had misled us by statements that he had made. I said it wasn't right for him to give us a misstatement, and such cases as that would be a penitentiary offense; but as far as saying to John that we would prosecute him is absolutely false. I had no idea of prosecuting him. I knew the condition he was in, that his back was broken and he would never get well. After we had talked it over, I said to John, 'The best thing we can do is for either you or I to go over and see Andrew, talk the matter over with him, and get an assignment, if we can.' I had written out an assignment. I figured that the amount paid under the policy would never equal the amount of our notes and interest. I told John that any amount paid to us from the company would be indorsed on Andrew's notes. I said, 'Now, John, I will go over with you, or go over alone, or, if you want to take it over, you can take it over.' He said he would rather go over himself. This was about 10 o'clock or 10:30 in the morning of July 15th, and about a quarter to 12 or half-past

John handed me the assignment, saying, 'I got the names on it.' He then told me that his brother Andrew requested that any indorsements of any money received on this policy be indorsed on the notes and receipts given. I didn't have any idea how he procured the assignment.

Upon the assignment having been signed by Andrew N. Kaus and his wife, it was returned to Gracey; the bank already having the policy in its possession as custodian.

The foregoing, while not presenting all the testimony, is a substantial statement of that which had bearing upon the transaction in question, and sufficiently presents the record as a basis for determining whether the motion to direct a verdict for the defendants should have been sustained.

The question directly presented by the motion, and which is relied upon here, is whether, giving to the facts their fullest probative force, they amount to such duress as render the assignment of no effect. Admitting that there is conflict in the authorities upon the question, counsel for appellants contend that the evidence does not warrant the finding of duress, which is but another term for undue influence, and also that it fails to show such connection with the transaction by Gracey as justifies the conclusion of law that he was bound by what then occurred.

Considering first the circumstances attending the execution of the assignment, we are of the opinion that the whole record presented such a question of fact as to require that it be submitted to the jury. If threats be made which are of such nature as to oppress the person, and such threats relate to his personal liberty or safety, or deprive him of the free exercise of his will, and prevent the meeting of minds necessary to a valid contract, the act may be void on the ground of duress. *Bank v. Loos,* 142 Iowa, 1. The cited case quotes from and adopts the rule stated in *Galusha v. Sherman,* 105 Wis. 263 (81 N. W. 495, 47 L. R. A. 417), as to the modern law of duress. See, also, *Joannin v. Ogilvie,* 49 Minn. 564 (52 N. W. 217, 16 L. R. A. 376, 32 Am. St. Rep. 581). The

rule above stated now has general approval in the authorities, and we apply it to the facts in this case. The evidence tends to show that at the time of the transaction Andrew N. Kaus was not only seriously injured, from the effects of which it was improbable that he would live, but was restless, in pain, the larger part of the time in a semi-stupor, or at least with closed eyes; that he refused to execute the assignment when it was first presented to him, but upon further suggestion by his brother of the charge that Andrew was claimed to have committed a penitentiary offense, and that there were threats to sue upon that theory, and, if such was done and such charge made, it would reflect not only upon the honor of Andrew, but also of his brother; to this was ,added the testimony of Andrew that it was then said if he did not sign they would probably ·send him to the penitentiary. In our ,opinion this clearly presents a state of facts which required the submission of the question to the jury. The instructions upon this question fairly stated the requirements which the law· placed upon him who has the burden of proof in such cases, and we think were without error.

III.   It is claimed,· however, that, even should the facts warrant the finding that the assignment was procured by duress, the defendants are not bound by the same, it not being shown that John Kaus was the agent of the defendants, or that knowledge of the transaction at the hospital was ever ·brought home to them. The evidence tends to show that the statements made by John Kaus to his brother as reasons why the latter should execute the assignment had in substance been previously made by Gracey to John Kaus, in discussing the question of procuring an assignment. It was at the request of the cashier that the mission was undertaken by John Kaus, and the verdict has support in the application of the fundamental rules governing agencies. In principle,· see *Hopkins v. Hawkeye Insurance Co.,* 57 Iowa, 203; *Mankin v. Mankin,* 91 Iowa, 406; *Wickham v. Evans,* 133 Iowa, 552. The cases cited dis-

2. SAME: agency: acts of agent.

cuss the question as to the effect of fraud upon contracts, but duress is a species of fraud in which compulsion in some form takes the place of deception in accomplishing the injury. 2 Cooley on Torts (3d Ed.) 966.

IV.   If the assignment in question had been voluntarily executed by Andrew N. Kaus, the pre-existing indebtedness afforded a sufficient consideration to uphold the transaction. *Rea v. Wilson*, 112 Iowa, 517.   But the application of that rule to the present case must be subject to the further claim as to the invalidity of the assignment because of duress; and, such appearing, the question of consideration, as applied to a pre-existing·debt, cannot apply.

3. SAME: assignment of insurance: consideration.

.V.   Error is urged because the trial court overruled objections to hypothetical questions propounded to medical witnesses.   As finally permitted to be answered, which was as to the effect which a condition such as plaintiff was shown to have been in would have upon his mental faculties, we think there was no error.

VI.   Offered instructions by the defendants which related to the question of duress, and the testimony of plaintiff upon that question were refused.   The errors have not been made the subject of argument by the appellants save as such have been included in the general discussion of liability.   The instructions given by the trial court fairly covered the subject, and there was no error in the refusal.

4. INSTRUCTIONS: refusal of requests.

.VII.   In division 1 of his reply, plaintiff pleaded duress, and in division 2 presented a plea of want of consideration. The appellants, in the lower court, moved to strike division 2 for the reason that it was in effect a plea of confession and avoidance, without an admission of the execution of the assignment, and also that the pleadings showed a consideration.   The motion was overruled.   The defendants also moved to require plaintiff to elect upon which count he would reply, and this was

5. PLEADINGS: reply: election.

overruled. In the instructions to the jury the trial court rested the case upon the single question of duress, and this would cure any error, if such there was in overruling the motion. But the pleadings presented in the two counts of the reply were in defense of the affirmative claim of defendants under the assignment, a copy of which was set out in the answer, and we are of opinion that the rule requiring an election would not apply to such.

We find no error, and the judgment of the trial court is *Affirmed*.

WEAVER, C. J., and DEEMER and GAYNOR, JJ., concur.