PAUL C. BELKNAP, ADMR. ET AL. *v.* NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY ET AL.

November Term, 1936.

Present: POWERS, C. J., SLACK, MOULTON and SHERBURNE, JJ., and STURTEVANT, Supr. J.

Opinion filed January 5, 1937.

422

*Frank E. Barber* for the defendant Northwestern Mutual Life Insurance Company.

*Herbert G. Barber,* guardian *ad litem,* for the defendant Kenneth R. Noyes.

*Stickney, Sargent & Chase* for the plaintiffs.

POWERS, C. J.   Willis C. Belknap, late of Rockingham, Vt., held a $5,000 policy in the defendant company, in which his daughter, Caroline B. Noyes, now Caroline B. Whitmarsh, was

named as beneficiary, and his grandson, Kenneth R. Noyes, then and now a minor, was named a contingent beneficiary. The policy was issued in March, 1931, and contained a reservation of the right of the insured to change or revoke the beneficiaries named. It also contained a provision whereby the insured "without the consent of any beneficiary not irrevocably designated or any contingent beneficiary," could borrow money of the company on receipt of the policy duly assigned. On August 1, 1934, Belknap assigned the policy to the Ludlow Savings Bank of Ludlow, Vt., to secure his promissory note for $1,700 and dated July 2, 1934, then held by that bank. This assignment was made on a blank furnished by the company and was forwarded to the home office when executed. It was subsequently returned with a later form used by the company, but this did not reach Belknap.

At the time the assignment was made, Belknap was the guardian of Kenneth Noyes, and after his own signature thereon, he added, "Kenneth R. Noyes, by Willis C. Belknap, Guardian." Our view of the case makes it unnecessary for us to consider the effect of this signature.

Belknap died on August 17, 1934. He left an estate ample to pay all outstanding debts, including the $1,700 note to the Ludlow Bank here involved, which note was duly presented to and allowed by the commissioners on the Belknap estate.

This is a suit in chancery brought by the bank and Paul C. Belknap, Administrator of Willis C. Belknap's estate, against the insurer, Kenneth R. Noyes, Roland W. Belknap, Guardian of Kenneth R., and Caroline Whitmarsh. The prayer of the petition asks that the insurer be ordered to pay out of the amount due on the Belknap policy, the $1,700 note aforesaid.

The defendants filed separate answers. Caroline B. Whitmarsh admitted the allegations of the bill. She also expressed her willingness to have her interest in the avails of the policy decreed to Kenneth R. Noyes, until such time as the income so received by him (to which she would otherwise be entitled) amounts to the sum taken from the insurance money to pay said note.

Kenneth R. Noyes, through a guardian *al litem* appointed at the request of the insurer, admits most of the allegations of the bill, asserts his rights to the avails of the policy as specified therein, and in effect denies the right of the bank to receive

any part of the insurance money. He also denies the allegations of paragraph 12 of the bill, which claim that irreparable injury will result to the Belknap estate and to Caroline B. Whitmarsh, unless the note is paid out of the avails of the policy.

The insurer's answer admits some of the allegations of the bill, denies others, and prays that the conflicting claimants be required to interplead so that their respective rights in the policy may be established, so that it can pay the proceeds of the policy to those legally entitled, as it is ready and willing to do.

No replications were filed. A decree was rendered for the plaintiffs ordering the payment of the note out of the insurance money, and awarding Mrs. Whitmarsh's interest therein to her son, Kenneth R., according to the terms of her offer.

The insurer and Kenneth R. appealed. The insurer filed exceptions.

■ The pleadings are rather informal and are not here questioned. There is no question of the jurisdiction of the court of equity before us. To be sure, Kenneth R. denied the allegations on which the plaintiffs based their right to equitable relief, and if this had been insisted upon, it would have answered the purposes of a demurrer incorporated in an answer. But when a defendant in equity does not demur for want of equity, or plead that defense, but avails himself of his privilege under the rule of raising the question by his answer, he must bring the question before the court in advance of a hearing on the merits. If he does not, he will be taken to have waived the point and to have submitted to the jurisdiction. *Wade* v. *Pulsifer*, 54 Vt. 45, 70; *Holt* v. *Daniels*, 61 Vt. 89, 94, 17 Atl. 786; *Waterman* v. *Moody*, 92 Vt. 218, 226, 103 Atl. 325.

■ Neither Mrs. Whitmarsh nor Kenneth Noyes had any vested rights in this policy when it was assigned as hereinbefore stated. By its terms, as stated, it reserved to Belknap the right to revoke or change the beneficiaries, and consequently all the interest that they had was an expectancy. *Modern Woodmen* v. *Headle*, 88 Vt. 37, 46, 90 Atl. 893, L. R. A. 1915A, 580; *Spaulding* v. *Mutual Life Ins. Co.*, 94 Vt. 42, 49, 109 Atl. 22; *Cummings* v. *Connecticut General L. Ins. Co.*, 101 Vt. 73, 80, 142 Atl. 82; *Travelers Ins. Co.* v. *Gebo*, 106 Vt. 155, 160, 170 Atl. 917.

■■ It cannot be doubted that an insurance company may by its policy prescribe the conditions on which it can be assigned. So far as these conditions go, the insured is bound by

them. But as between the assignor and assignee, any assignment, however informal, is binding. But by the company and others legally interested in the policy the validity of the assignment may be called in question.

■ The only provision of the policy here involved that applies to assignments is as follows: "No assignment of this policy shall be binding upon the company until filed with the company at its home office." So all that is called for is a written assignment filed at the home office. This assignment was made upon a printed blank furnished by the company, which carried a printed heading "Assignment of Policy as Collateral Security." It was signed by Belknap and executed according to the calls of the blank. A duplicate was immediately forwarded to the home office of the company and the fact that it was there received while Belknap was yet alive is conclusively shown by the company's letter dated August 3, 1934, acknowledging its receipt.

It thus appears that the assignment was complete and binding so far as the requirements of the policy are concerned.

■ An assignment of a life insurance policy, however, is nothing more or less than a contract, and like any other contract must be supported by a sufficient consideration. 14 R. C. L. 1002; note 87 A. S. R. 491.

It is argued that this assignment was not made on a "valuable" as distinguished from a "good" consideration; and that for this reason it is ineffective. And it is said that *Blin* v. *Pierce*, 20 Vt. 25, is not to the contrary.

■ That there is, or was, a technical distinction between a good consideration and a valuable consideration must be admitted. A good consideration was defined as one of blood or of natural love and affection, being founded on motives of generosity, prudence, and natural duty, and a valuable consideration, as one by which some benefit accrues to the promisor or some detriment to the promisee. 1 Rap. & Lawr. Law Dic. 268. It is there said that it seems that the only purpose for which a good consideration in this sense is effectual in law, where the contract has not been fully performed, is to support a covenant to stand seized to uses; and that, since such covenants are now comparatively unknown, "good" and "valuable," as applied to considerations, are synonymous terms. To the same effect, see 1 Chit. Cont. (11th Am. ed.) 27, where it said, "Hence it is that, in

treating of the consideration for a simple contract, we must use the words *good* and *valuable* as convertible terms.''

■ It is further said that the note secured by this assignment was not due, so that there was no detriment to the bank nor benefit to Belknap, and that for this reason there was no consideration for the assignment. This conclusion is untenable. If, in the situation that existed when the assignment was given, Belknap had merely promised to give it, that promise would have been nude for the reason stated. But when he executed the assignment and delivered it and the policy to the bank, his contract was completed and the consideration of the $1,700 note carried over and became the consideration of the assignment. See *Gold Medal S. M. Co.* v. *Harris*, 124 Mass. 206, 208, and *Turner* v. *McFee*, 61 Ala. 468, 472, where it is said that ''no case can be found in which a man's own debt has been ruled to be an insufficient consideration between him and his creditor, for a mortgage or other security received by the latter from the debtor.''

■ That a pre-existing debt is a sufficient consideration for an assignment of an insurance policy is shown by *Kaus* v. *Gracey*, 162 Iowa, 671, 144 N. W. 625, 627.

We hold, therefore, without hesitation, that this assignment is supported by a sufficient and valuable consideration. *Blin* v. *Pierce*, 20 Vt. 25, 29; *Bailey* v. *Bussing*, 29 Conn. 1, 5; *Haseltine* v. *Gould*, 11 N. H. 390, 394.

This brings us to the question as to what effect upon the rights of the beneficiaries this assignment has; and this is the most difficult and important question in the case.

The authorities are in hopeless conflict. Some hold, though recognizing a distinction between an assignment and a change in beneficiaries, that an assignment which fulfills the several requirements of the policy as to such changes, is to be given effect as a change of beneficiaries. Others hold that this cannot be done and the beneficiary can only be changed by the method provided in the policy, strictly followed. Still others hold that in case of a policy reserving to the insured the right to change the beneficiary at will, the insured has full control over the policy during his life and may assign it and thereby defeat in whole or in part the interest of the beneficiary.

*Merchants Bank* v. *Garrard*, 158 Ga. 867, 124 S. E. 715, 38 A. L. R. 102, may be taken as a fair representation of the cases

of the first group. There the assignment met every require-
ment of the policy regarding a change of beneficiaries, and the
court held that it "was, in effect, a substitution of the assignee
for the original beneficiary." It is true that the assignment
there included the words, "together with all dividends, benefits,
and advantages to be had or derived therefrom," in addition to
the words of the assignment of the Belknap policy. But it is
submitted that the words of the assignment here, "all my right,
title and interest" in and to the policy, necessarily embraced
all that the terms of the Garrard assignment covered.

*Deal* v. *Deal*, 87 S. C. 395, 69 S. E. 886, Ann. Cas. 1912B,
1142, though now overruled, may be taken as fairly illustrative
of the cases wherein the assignments did not meet the policy
requirement pertaining to the change of beneficiaries, and the
courts hold that they cannot be given effect as such.

*Anderson* v. *Broad Street Nat. Bank*, 90 N. J. Eq. 78, 105
Atl. 599, may be taken as an illustrative case of the second group
above referred to, wherein it is held that the right reserved in
the policy to change the beneficiary does not, by implication,
affect the rights of the insured beyond the terms of the reserva-
tion, and that such a change cannot be effected by an assignment,
though it meets every policy requirement for such a change.

*Mutual Life Ins. Co.* v. *Twyman*, 122 Ky. 513, 92 S. W. 335,
97 S. W. 391, 121 A. S. R. 471, 476, is a case of the last group
above referred to. It was twice argued and carefully con-
sidered. On the first argument, an opinion was filed—see *Mutual
Life Ins. Co.* v. *Twyman*, 28 Ky. L. Rep. 167, 89 S. W. 178—
which was withdrawn and a reargument granted. Upon re-
argument it was held that, notwithstanding a statute that was
said to prevent it, one holding a policy payable to his wife and
two sons, which reserved to him the right to assign it and to
change the beneficiaries therein, could, without the consent of
the beneficiaries, assign the policy as security for his debt—
which holding is contrary to that of the original opinion. This
was affirmed in *Crice* v. *Illinois Life Ins. Co.*, 122 Ky. 572, 92
S. W. 560, 121 A. S. R. 489.

The South Carolina court has had much trouble with these
assignment cases. But it has now reached a conclusion that one
insured by a policy payable to a beneficiary named therein, may
assign the same for a valuable consideration and thereby give
priority over the beneficiary to the assignee, if the policy gives

him authority to change the beneficiary. *Antley* v. *New York L. Ins. Co.,* 139 S. C. 23, 137 S. E. 199, 60 A. L. R. 184. It is true that the terms of that policy are somewhat different from this one, but the authorities cited in and the reasoning of he opinion leave no doubt that this case would be ruled the same way by that court. The case was carefully considered and five previous cases were expressly overruled by it.

*Bank of Belzoni* v. *Hodges,* 132 Miss. 238, 96 So. 97, 98, is a case directly in point here. It was there held that a policy holder may borrow money and secure the debt by an assignment of the policy without the consent of the beneficiary named in the policy, if the right to change the beneficiary is reserved therein; and that this can be done without compliance with the policy requirements regarding such change.

In *Martin* v. *Stubbings,* 126 Ill. 387, 18 N. E. 657, 9 A. S. R. 620, 627, it was held that one holding a certificate of membership in a mutual benefit association payable to his wife could lawfully assign it as security for his debt, and to the extent of that debt could give the creditor preference over the beneficiary.

In *Mutual Benefit Life Ins. Co.* v. *Sweet,* 222 Fed. 200, 205, Ann. Cas. 1917B, 298, 301, the Circuit Court of Appeals for the Sixth Circuit held, in a studied opinion, that one insured by a policy, payable to a designated beneficiary and containing a provision for an assignment thereof and a change of beneficiary therein, could assign the same as security without the consent of the beneficiary, and that "his control over the policy was, subject to its terms, as complete as if he himself had been the beneficiary."

To the same effect is *Rawls* v. *Penn. Mut. Life Ins. Co.,* 253 Fed. 725, *certiorari* denied, 249 U. S. 614, 63 L. ed. 802, 39 Sup. Ct. 388.

When we take into consideration the unquestioned rule that under a policy like the one in hand a beneficiary takes nothing therein but an expectancy, we think that it is more logical, more equitable, and more in harmony with the spirit of our decisions to hold that this expectancy may be defeated by the insured, either completely by a technical change of the beneficiary, or partially and contingently by an assignment made on a valid consideration. We recognize the distinction between an assignment and a change of beneficiary when we say this. The assignment here conveys to the bank all the "right, title and

interest'' that Belknap had in the policy. Some are broader in terms, but none is broader in effect. The policy was his. He alone was obligated to pay the premiums. The beneficiaries were, at best, donees, merely. The policy in this respect should be construed liberally toward the donor.

We hold that one of the rights which Belknap still retained in this policy when he assigned it was the right to make use of it as security for his debt, as he did. This he could do without the consent of the beneficiaries and in spite of them.

In reaching this conclusion we are not unmindful of the fact that it is opposed by courts of high standing; but we are confident that no other conclusion would result in so just a determination of the rights of the parties according to the true intent with which the insurance contract was entered into.

*Decree affirmed and cause remanded.*