# Richmond

HAMMOND SAUNDERS v. COMMONWEALTH OF VIRGINIA.

November 24, 1947.

Record No. 3239.

Present, Hudgins, C. J., and Gregory, Eggleston, Spratley and Buchanan, JJ.

The opinion states the case.

*James G. Martin & Sons*, for the plaintiff in error.

*Abram P. Staples, Attorney General*, and *Ballard Baker*, for the Commonwealth.

BUCHANAN, J., delivered the opinion of the court.

On a verdict of a jury convicting him of the crime of pandering, the defendant has been sentenced to serve three years in the penitentiary and to pay a fine of $500.

Section 4579 of the Code (Michie), 8th par., provides that the offense is committed when any person "shall knowingly receive any money or other valuable thing from the earnings of any female engaged in prostitution, except for a consideration deemed good *or* valuable in law" (emphasis

added); and is to be punished by confinement in the penitentiary for not less than one nor more than ten years and a fine of not more than five hundred dollars.

The evidence for the Commonwealth was that about the first of June, 1946, the defendant took a young woman named Willie Taylor to Fairfax Hotel in Norfolk for the purpose of having her engage in prostitution and of his sharing her earnings; that she was there assigned a room and he told three of the negro bellboys that she was there for that purpose and arranged with them to make engagements for her and take her to rooms in the hotel to fill such engagements; and the defendant and the bellboys were to receive an agreed part of her earnings. She was so engaged at the hotel for about ten days, during which time the defendant visited her about every day and got his part of the money from a bureau drawer, where she put it for him, or else she gave it to him herself. During that time they took a trip to New York together, following which they had a quarrel and the venture ended after they came back and she became ill and went to a hospital.

The defendant denied receiving any money from her, but admitted getting a room for her at the hotel, and claimed he paid for it in consideration of having relations with her. He testified that he did not know she was a prostitute until they were coming back from New York, and he then broke off relations with her. The defendant admits that the evidence against him is sufficient to support the verdict, but claims that prejudicial errors were committed on the trial for which the verdict should be set aside.

The first error assigned is that the indictment was fatally defective and the defendant's motion to quash it should have been sustained. This is based on the fact that the indictment charged that the money received by the defendant from the earnings of the prostitute was not for a consideration deemed "good AND valuable in law" instead of charging that it was not for a consideration deemed "good OR valuable in law," as the statute has it. The indictment charged that the defendant "feloniously did knowingly re-

ceive money from the earnings of one Willie Taylor, a female, then and there engaged in prostitution, the said money so received as aforesaid not being for a consideration deemed good AND valuable in law, in violation of Section 4579 of Michie's Code of Virginia." (Capitals added.)

██ The motion to quash was properly overruled, for more than one reason.

The objection was not sufficiently stated before the trial court. The record shows that the defendant's attorney (who was not the attorney now representing him on this appeal) moved to quash the indictment "because it does not make out a cause of action, as stated. I submit to you that the indictment is not drawn in accordance with the statute," and he proceeded to argue that the indictment was not definite enough, saying, "I mean, as the indictment is drawn now, if Your Honor please. It says, 'deemed good or valuable in law.'"

The court said, "that is the language of the statute;" and then,

"Mr. Fine: Yes, sir, but I do submit, if Your Honor please, it has got to set forth some facts rather than that conclusion."

The court thereupon overruled the motion and the attorney said: "I note an exception, if Your Honor please, on the ground that we do not know how to meet the defense in a case of this sort; secondly, if Your Honor please, that it does not constitute a cause of action in accordance with the statute."

It is plain from the whole context that the point of the objection was that the indictment stated a conclusion instead of facts. It is perfectly clear that the motion was not based on the variance between the indictment and the statute, because the attorney told the court that the indictment had the same words as the statute. The ground on which the defendant now relies was not stated "with reasonable certainty" (Rule 22), and he is not entitled to have the case reversed on a technical point not called to the attention of

the trial court and from which he has suffered no possible harm.

If he had directed the attention of the court to the point he is now making, the indictment could, and no doubt would, have been amended to conform to the statute (Code section 4877), and if he needed further details he could have asked for a bill of particulars. Criminal trials are not to be upset on technicalities that are of no consequence. Objection after verdict comes too late. Code, section 4879.

Moreover, the indictment was sufficient as it stood. The attempted distinction between "good or valuable," as in the statute, and "good and valuable," as in the indictment, is, in the practical aspect of the matter in this case, a distinction without a difference. It has been frequently held, in cases involving purchasers for value and transactions questioned for fraud, that "good consideration" and "valuable consideration" mean the same thing and are convertible terms. *Arrington* v. *Arrington,* 114 N. C. 151, 19 S. E. 351; *Belknap* v. *Northwestern Mut. Life Ins. Co.,* 108 Vt. 421, 188 A. 897; *Hodgson* v. *Butts,* 3 Cranch (7 U. S.) 140, 2 L. Ed. 391.

Technically there is a distinction between the terms, which in some cases it would be necessary to observe; but the distinction is frequently ignored and the terms treated as synonymous. 17 C. J. S., Contracts, sections 91-2, p. 438.

While it is much safer, and quite advisable, to charge a statutory offense in the words of the statute, it is not essential to use the precise words of the statute if the words used are equivalent to those used in the statute. *Sink* v. *Commonwealth,* 152 Va. 1002, 147 S. E. 231.

An indictment is required only to inform the accused of the cause and nature of the charge against him. Va. Const., section 8; Code, section 4865; *Livingston* v. *Commonwealth,* 184 Va. 830, 36 S. E. (2d) 561.

It could make no difference to a defendant whether the type of consideration that would excuse him is described disjunctively, as in the statute, or conjunctively, as in this indictment. The statute pronounces the crime when a per-

son knowingly receives money from the earnings of a prostitute except for a good or valuable consideration. The character of the consideration becomes important only when evidence is offered that there was consideration. If such evidence is offered, the Commonwealth would have to show that the consideration was not good or valuable, in the language of the statute. To prove the indictment in this case, the Commonwealth would have to show that the consideration was not good and valuable, as it alleged. It could not prove both without proving each; that is, it could not show that such consideration was not good and valuable without showing that it was neither good nor valuable. In other words, the Commonwealth could not prove its case under the indictment without proving its case under the statute. It would be immaterial in any case, therefore, whether the consideration was described in the indictment as good or valuable or good and valuable. It was doubly immaterial here because the defendant did not claim there was any consideration for the money he received. He claimed he did not receive any money.

█ On cross-examination by the then counsel for the accused, witness Willie Taylor testified she had intercourse with the accused the first night. Counsel then asked her if she "sort of liked his sexual ability." The court sustained an objection to that question "vigorously," and defendant says that was error. Any answer to it would have had no bearing on the issue being tried. The material evidence was unpleasant enough to listen to. It was proper to sustain the objection and not surprising that it was done "vigorously."

█ It is also said the court erred in sustaining objection to a question to Willie Taylor on cross-examination inquiring whether counsel was correct in his understanding that she did not have intercourse with the accused in New York because she did not want to and not because she was ill. She had already plainly so stated and no harm could have resulted from not permitting it to be stated again.

█ Willard G. Morrisette, formerly a clerk at the Fair-

fax Hotel, was introduced as a witness by the defendant and asked on direct examination "who was the first one to tell you that this girl, Billie Gooch, also known as Billie Taylor, was a prostitute, and she ought to be put out of the hotel?" Objection to it was sustained and the witness was expected to answer that the accused did that. The ground of objection was not stated. The court seems to have sustained it on the ground that such statement would be self-serving. It was objectionable on that ground and also because it was leading.

It was not attempted to fix the time when such statement was made. It must be taken from the record that it was after the relation between Willie Taylor and the accused had ended. Mrs. Taylor said they went to the Fairfax Hotel about the first of June. Defendant said it was between the 10th and 15th. Mrs. Taylor said the arrangement with the defendant lasted about ten days. Defendant said the time involved was shorter. On either version it was in June. Following the question to which the objection was sustained, defendant's counsel asked Morrisette whether in June, 1946, he saw Saunders associated with Willie Taylor. The witness replied: "I did not see Saunders at all. I did not know Saunders at all in June."

After Mrs. Taylor and the defendant quarreled and parted company, the defendant had reason to prepare against the future, and the statement made by him under those circumstances was self-serving and inadmissible. It could hardly be imagined that the jury would have attached any weight to such a statement, if it had been admitted. By the defendant's own admission, he took her to the hotel and paid for her room in consideration of having relations with her.

It is insisted that the court committed prejudicial error in dealing with Viola Smith, a witness for the defendant. Willie Taylor had testified on cross-examination, during the morning of the trial, that she came back to Norfolk about two weeks before the trial (November 29, 1946), and had worked at the Victory Restaurant. In the afternoon Viola

Smith, testifying as a witness for the defendant, said she had been working at the Victory Restaurant for a year and that Willie Taylor did not work there. Asked how she knew, she said because she had phoned her boss a while ago and inquired. It appeared that she had been summoned as a witness on November 7, three weeks before the trial, and on cross-examination she was asked how she knew Willie Taylor was going to testify on the trial that she had worked at Victory Restaurant, and as to when she communicated that information to the defendant or his counsel. She answered, "I don't know." Pressed on the point, she continued to answer, "I don't know" or "I still don't remember." The attorney for the Commonwealth asked the court to require her to answer, but before the court ruled, she said, "Maybe I have a short memory." Again she was asked whether it was on yesterday that she knew what Willie Taylor would testify to and she replied, "Let's hold that question. I will think it over. Could I ask you a question?" The court then read the subpoena to her, told her there must have been some reason why she was summoned on November 7, and asked her if she could explain that. She said no. On continued examination she said she was not acquainted with Willie Taylor. Asked how she knew her name, she replied, "Maybe I heard somebody speak it; I don't know."

Thereupon the court rebuked the witness, told her he was not going to put up with her answers of that character; that her information was a proper subject for investigation and she must answer. The witness replied that she was answering to the best of her knowledge, and the court ordered the sergeant to "retain this girl when she gets through." At the conclusion of her testimony the court said: "All right, Mr. Sergeant," and to the witness, "You go with the Sergeant. Have a seat over there in the courtroom." The defendant moved for a mistrial for prejudice because of this procedure.

The court later, out of the presence of the jury, fined the witness $5 for contempt, stating to her that her attitude

on the witness stand was quite obnoxious, that she was evidently "stalling" and that he could not permit a witness to conduct herself like that in court. The witness replied that she was sorry. The court added that he could not "expect the Court to retain the respect of the community when nothing is done to witnesses who are impertinent."

The court then gave to the jury this instruction: "Whatever disciplinary action the Court may take with reference to any witness who testifies in the course of a trial has nothing to do with the credibility of that witness, but merely with the proper procedure of a legal trial. The credibility of that witness, as to all witnesses, is exclusively for the determination of the jury."

■ The unimportant character of the testimony of the witness, coupled with the instruction, prevents this incident from being reversible error. The evidence was not on a material point. The most that could be said for it was that it tended to contradict Willie Taylor on her statement that some two weeks before the trial, and several months after the happening of the matter under investigation, she had worked at the Victory Restaurant.

In *Pinn* v. *Commonwealth,* 166 Va. 727, 186 S. E. 169, a witness for the Commonwealth suggested, while testifying, that one of the principal witnesses for the defendant had tried to intimidate him; whereupon, the court ordered that a rule be issued against the defendant's witness, "to show cause why he shouldn't be attached and punished for contempt in intimidating this witness." We held that to be prejudicial, on the ground that the jury could well have concluded that the judge believed the charge and his remarks were well calculated seriously to discredit an important witness for the defendant.

The situation here is more like that in *Henson* v. *Commonwealth,* 165 Va. 821, 183 S. E. 435, where a witness for the Commonwealth testified that the main witness for the defendant had tried to prevent her from testifying against the accused in another matter in another court. The trial judge told the Commonwealth's attorney to communicate

that fact to the judge of the other court, saying, "if it was in this court I would issue a bench warrant for the man." Exception was taken to the comment and the court stated to the jury he did not mean to intimate that defendant's witness was guilty of the charge and was not passing on the truth of it. We held that statement, in the light of what transpired at the time, was not error.

We cannot say that the trial judge was wrong in holding that the witness was in contempt. The manner of the witness in testifying, which the trial judge saw and we did not, was an important element, and her answers themselves give indication of a contemptuous attitude.

██ Necessarily, a trial judge has wide discretion in dealing with witnesses for contempt. (Cf. *Benton* v. *State*, 58 Ga. App. 633, 199 S. E. 561). It is, of course, a discretion that must not be abused. It is better, if possible, that necessary disciplinary action be taken at a time and in a manner that will avoid the possibility of affecting the jury. It will constitute reversible error, as we have held, if it may fairly be concluded from the way it was done that it amounted to an expression of opinion by the trial judge on the weight of material testimony, or indicated his bias or feeling to such an extent as to have affected the verdict. *Pinn* v. *Commonwealth*, *supra*; *Hicks* v. *Commonwealth*, 178 Va. 261, 16 S. E. (2d) 639; *Mazer* v. *Commonwealth*, 142 Va. 649, 128 S. E. 514. We think neither occurred in this case.

It is further assigned as error that the court refused to admit further testimony as to an injury suffered by defendant that prevented his working in the summer. The additional testimony was on an undisputed point, and the defendant was not prejudiced by the refusal to admit it. The defendant and his sister both testified to his disability, and his brother testified without objection that he did not work much in the summertime due to an injury received about 20 years ago. In fact, the court sustained the objection to further testimony from the sister "if her testimony is unchallenged that he was unable to work."

There is a final general assignment of error to the effect that the rulings and statements of the court through the trial showed the jury that he thought the defendant was guilty and that the defendant was thereby prejudiced on the questions of his guilt and the amount of his punishment, and deprived of a fair trial.

From a careful consideration of the whole record, we do not believe this to be a proper conclusion. It may be conceded that the record shows instances of impatience and some comments and questions not in keeping with the calm and patient method that is desirable and important in a judicial inquiry to find the truth. But the impatience here was largely toward counsel, induced, understandably, by the content and manner of some of his questions and objections. In a closer case the matters complained of would be more serious. In this case the evidence clearly showed the guilt of the defendant; the punishment inflicted was merited and does not warrant an inference that it was affected otherwise than by the evidence. On the whole case we conclude that the accused has had a fair trial and that no reversible error has been shown.

*Affirmed.*