## Richmond

BOARD OF SUPERVISORS OF HANOVER COUNTY, VIRGINIA V.
LEON M. BAZILE, JUDGE OF THE CIRCUIT COURT OF
HANOVER COUNTY, AND GEORGE M. WEEMS,
TREASURER OF HANOVER COUNTY.

March 15, 1954.

Record No. 4245.

Present, All the Justices.

*Allen, Allen, Allen and Allen* and *George E. Allen*, for the petitioner.

*Leon M. Bazile, George M. Weems, Leith S. Bremner, Robert Lewis Young* and *Bremner & Young*, for the respondents.

BUCHANAN, J., delivered the opinion of the court.

The Board of Supervisors of Hanover county filed its original petition in this court on November 5, 1953, alleging that George M. Weems, Treasurer of Hanover county, herein referred to as respondent or Weems, had failed to comply with the writ of mandamus issued from this court on the 10th day of September, 1952, commanding him to remove the records, equipment and furnishings of the treasurer's office from the town of Ashland to the space assigned him at the county seat of Hanover county, and there to maintain the treasurer's office as ordered by the Board of Supervisors of Hanover county. The petition alleged that instead of complying with the writ the respondent had filed in the Circuit Court of Hanover county a bill for a declaratory judgment, praying for an adjudication of matters already adjudicated by this court. The petition prayed that a writ of prohibition be awarded to prohibit the judge of the Circuit Court of Hanover county from proceeding in said suit, and that a rule be issued against the respondent to appear and show cause why he should not be punished for his contempt.

The Honorable Leon M. Bazile, Judge of the Circuit Court of Hanover county, filed his answer to the petition to

the effect that his was a court of general jurisdiction, including jurisdiction of declaratory judgment proceedings; that Weems in his bill alleged that controversies had arisen between him and the Board about directions issued to him by the Board since the issuance of the mandamus and not passed on by this court in the mandamus case; that on January 19, 1953, after the filing of the bill, the Board had applied for and been granted an extension of three weeks to file its pleadings and on February 7, 1953, the Board had filed a demurrer to the bill, which was afterwards argued by counsel; that having thus made a full appearance the Board was now estopped from having a writ of prohibition and should litigate the questions in the circuit court and appeal if not satisfied with the ultimate decision.

Afterwards, on September 30, 1953, Judge Bazile filed a written opinion overruling the demurrer, on the ground that the real basis of the demurrer was that the mandamus case was *res judicata* of the declaratory judgment proceeding; that while his court could not amend or alter the mandate of this court, it did have authority to construe that mandate and examine the record in the mandamus case to determine whether that case was *res judicata* of the declaratory judgment proceeding.

The respondent also filed his answer to the Board's petition in which he averred that the matters set out in his bill for a declaratory judgment arose after the mandate of September 10, 1952; that he had not violated said mandate but had complied with it; that he was an attorney at law and as such had concluded that the declaratory judgment proceeding, which was filed by him on December 29, 1952, was the only course available to him to avoid a citation for contempt; and that he did not intend to disobey the mandate of this court. He set out in his answer reasons why he considered it necessary or desirable to continue to operate an office at Ashland in the manner hereinafter described. With his answer he filed notes of argument with citation of cases for his position that the writ of prohibition should be

denied and that the contempt proceeding should be dismissed.

Depositions were taken and filed by both sides, briefs were filed by the Board, by Judge Bazile and by respondent, and oral arguments were heard, Weems appearing in person and arguing in his own behalf.

■  We shall deal first with the question of contempt.

On June 9, 1952, the Board filed its original petition in this court praying that a writ of mandamus be issued to compel Weems to comply with an order of the Board directing him to remove the treasurer's office of the county from the town of Ashland to the county seat at Hanover courthouse. Weems filed his answer to that petition setting forth his reasons for not having complied with the Board's order, one of which was that the town of Ashland was a point more convenient to a majority of the citizens of Hanover county for the treasurer's office.  That case was decided and an opinion rendered on September 10, 1952, *Board of Supervisors* v. *Weems*, 194 Va. 10, 72 S. E. (2d) 378.  It was there held that the General Assembly had required by § 58-916 of the Code that the office of the county treasurer should be maintained at the county seat and had delegated to the Board of Supervisors, and to no other, the authority to determine whether some place other than the county seat was more convenient to a majority of the citizens for the office of the treasurer.

It was accordingly ordered "that a peremptory writ of mandamus do forthwith issue directed to George M. Weems, Treasurer of Hanover County, Virginia, commanding him to remove the records, equipment and furnishings of the treasurer's office from the town of Ashland to the space assigned him at the county seat of Hanover County, Virginia, where he shall maintain the Treasurer's Office as ordered by the Board of Supervisors of Hanover County."

The mandamus so issued has not been obeyed in letter or in spirit.  On the contrary, the record before us shows a

deliberate and studied purpose to evade the requirements of the order of this court. The respondent has established what may be termed a token treasurer's office at the county seat but has continued to maintain the real treasurer's office at Ashland for all practical purposes as it was before the mandamus was issued.

Respondent is a practicing lawyer. He owns the building in Ashland in which he has the treasurer's office and also his law office, which connects with the treasurer's office. He spends most of his time in Ashland because, he said, "I am subject to a great number of calls there where we have been collecting taxes and someone has to be in control of the office at that location." At the time he testified, December 21, 1953, he had four employees working for the county in the Ashland office and his own law secretary frequently did county work there without extra charge. He uses extra employees there during the rush time of tax collections.

Photographs were introduced showing the arrangement and equipment of the Ashland office, the over-all length of which, including the hallway, is 32 feet. The doorway to the main office carries the legend "G. M. Weems—Hanover County Treasurer—Attorney at Law." The office is 17 x 22 feet, in addition to which there is a vault 10 x 14 feet. Besides the vault the office is equipped with metal cabinets, wooden desks, customer counter, typewriter, adding machines and other items, described as being all the facilities necessary for the conduct of the treasurer's office.

Pictures of the office at Hanover courthouse were also introduced. That office is comprised of two rooms and is equipped with customer counter, a metal cabinet and safe, vault, desks, four adding machines, typewriter and other equipment usual to such an office. Only one employee is kept in that office, who described himself as clerk and bookkeeper for the treasurer. He testified that the treasurer's business done at Ashland was twenty-five or thirty times more than that done at Hanover; that he was customarily at

the Hanover office from nine-thirty in the morning to four-fifteen in the afternoon and that those hours could be cut in half and he could still do all the work necessary at Hanover to wait on the taxpayers; that all money received at Hanover was taken to the Ashland office for safe keeping. He testified also that when the mandamus was issued everything in the Ashland office that belonged to the county was taken to Hanover except some portable files.

Much of the other testimony taken by the respondent was to the point that the Ashland office was better equipped, cheaper and easier to operate and more convenient to a majority of the people in the county than was the office at Hanover.

Respondent's answer to the present petition of the Board, his briefs and his oral argument were of the same tenor.

He asserts in his answer that in obedience to the mandate he moved all of the records and equipment which belonged to the county from the Ashland office to the Hanover courthouse; but he says that by May, 1953, it became apparent to him that a great many taxpayers were not coming to Hanover to pay taxes and were not going to mail payments in, and that it was necessary to bring back to Ashland the tax tickets for that town and two of the magisterial districts, which he did, along with most of his clerical employees; and that at Ashland he personally furnished the necessary office supplies, heat, lights, water and janitor service; but kept the office copies of the paid bills and copies of the assessment books at the Hanover office. He states that he can best perform his duties at Ashland and that it is not necessary for him to be present at Hanover. He gives his own construction of § 58-916 of the Code and furnishes definitions for its words to show, as he claims, that he is thereby permitted to do what he is doing at Ashland. He avers that he must perform his duties for the best interests of the citizens and "after careful study he has concluded that they can be best performed by retaining the clerical employees at Ashland and by not sending them to Hanover."

Again in the notes of argument filed with his answer respondent sets out his conclusion that he does not have to perform the duties of his office in the official office at Hanover but may perform them in orderly manner in Ashland.

It thus clearly appears that in spite of the requirement of § 58-916 of the Code that the office of the treasurer shall be maintained at the county seat unless the Board otherwise designates, and that the treasurer shall keep therein all his official accounts and records; and in spite of the order of this court that he shall remove the records, equipment and furnishings of the office to and maintain the treasurer's office at the county seat of Hanover county, the respondent still maintains and purposes to continue to maintain the real treasurer's office at Ashland just as he was doing prior to the hearing and decision in the mandamus case resulting in the issuance of the mandate of this court.

It was the duty of the respondent to obey the law as declared by this court and he owes to nobody any higher duty than that. It is not for him to set himself above the law and go his own way because he deems the law's requirements to be unwise or its restraints vexatious. In such manner does a government of laws become a government of men.

While the respondent disclaims intending any disrespect for the order of this court, or any purpose to disobey the writ of mandamus, the record shows conclusively that he has in fact disobeyed that order. Willful disobedience to any lawful process or order of court is contempt and summarily punishable as such. Code § 18-255(5); *Forbes* v. *State Council*, 107 Va. 853, 60 S. E. 81; *Robertson* v. *Commonwealth*, 181 Va. 520, 25 S. E. (2d) 352.

With respect to conduct or language where the intent with which a thing is said or done gives color and character to the act or words, a disclaimer of any purpose to be guilty of contempt is a good defense; but that is true only of language or acts of doubtful import, and which may

reasonably bear two constructions. *Carter* v. *Commonwealth*, 96 Va. 791, 802-3, 32 S. E. 780.

"The power to fine and imprison for contempt is incident to every court of record. The courts *ex necessitate rei*, have the power of protecting the administration of justice, with a promptitude calculated to meet the exigency of the particular case." *Wells* v. *Commonwealth*, 62 Va. (21 Gratt.) 500, 503.

The suggestion of the respondent that he acted upon his own advice as his own lawyer, "after mature consideration of the laws and decisions pertaining thereto" does not serve the respondent on this record. "* * * (A)s it is the duty of the client, so is it the duty of the attorney, and in a higher sense considering his relation to the courts, and in general his greater intelligence and capacity to appreciate its importance, to respect the authority and to maintain the lawful jurisdiction of the courts of justice." *Wells* v. *Commonwealth, supra,* 62 Va. (21 Gratt.) at p. 508.

The petition of the Board was for a rule against the defendant to show cause why he should not be punished for his contempt. The office of a rule is to give notice to the defendant, and since the proceedings had on said petition have given him due notice and opportunity for defense, and he has personally appeared and fully presented his defense, it is proper to proceed to judgment without the formality of a rule. 4 Mich. Jur., Contempt, sec. 26, p. 270.

Accordingly we hold the respondent Weems to be in contempt for his disobedience of the order of this court and the writ of mandamus thereon issued on the 10th day of September, 1952, commanding him as above set forth, and it is ordered that he pay a fine of $350 and be imprisoned for four months in the jail of Hanover county. He shall forthwith pay said fine to the clerk of this court for the benefit of the Commonwealth, but the jail sentence is suspended on condition that the said Weems shall fully comply with the order of September 10, 1952, on or before the 10th day of April, 1954; and he shall file with the clerk

of this court on or before the first day of the April, 1954, session of this court a statement in writing showing how he has complied with said order and writ of mandamus.

We are of opinion that the prayer of the Board for a writ of prohibition should be denied.

The general principles governing writs of prohibition are well stated in *Supervisors of Bedford* v. *Wingfield*, 68 Va. (27 Gratt.) 329, 333-4, where it is said, among other things, that prohibition, like all other extraordinary remedies, is to be resorted to only in cases where the usual and ordinary forms of remedy are insufficient to afford redress; that it is not a writ of right, but one of sound judicial discretion, to be granted or withheld according to the circumstances of each particular case. It is issued to restrain inferior courts from acting without authority of law where damage or injustice is likely to follow from such action. It is never allowed to usurp the functions of a writ of error. See also *Grief* v. *Kegley*, 115 Va. 552, 557, 79 S. E. 1062, 1064.

The point is made in the brief filed by counsel for Judge Bazile in this court that it is prerequisite to the right to apply to this court for a writ of prohibition that a formal plea to the jurisdiction of the lower court be there filed, as contended by Judge Lewis in his dissent in the case of *Commonwealth* v. *Latham*, 85 Va. 632, 8 S. E. 488. It is not necessary now to decide that question, but it may be said that while that is the better practice, the majority of courts hold that it is not always essential, particularly where the judge of the lower court appears and asserts his jurisdiction. 42 Am. Jur., Prohibition, § 39, p. 172.

So far as the question of contempt is concerned we construe our own order and mandate, weigh the evidence presented as to whether it has been disobeyed and determine for ourselves the proper judgment. We do not require the aid of any other court to make that determination. That jurisdiction, which is a necessary arm of the original jurisdiction of this court to issue a writ of mandamus, is not to be

ousted by the filing of a bill for a declaratory judgment in a lower court nor by a decision of that court as to whether a defendant is in contempt for what he has done or will be in contempt for what he proposes to do with reference to obeying the order of this court.

The order of this court was that the respondent maintain the treasurer's office at the county seat of Hanover county. It is not difficult for respondent to understand what that means and nothing less than that will constitute obedience to the order of this court and only compliance therewith will render him immune from contempt proceedings.

In his bill for a declaratory judgment respondent alleged that a controversy existed between him and the Board in regard to § 58-916 of the Code; that the order of this court commanded him to remove the records to and maintain the treasurer's office at the county seat; that he had removed all the records together with all the tax tickets and other papers of his office to the county seat; that the Board had endeavored to prevent him from doing any of the work of his office at any point other than the county seat and referred to resolutions passed by the Board on November 3 and December 18, 1952; "that the present location of the Treasurer's Office at Hanover Court House causes a great inconvenience to about two-thirds of the citizens living west of Hanover;" that § 58-916 of the Code only requires that he keep open the Hanover office during such hours and days as he deemed reasonably necessary for business there; and that he was required to have in his official office only his account books showing receipts and disbursements of money, together with other records as he is required by statute to prepare, and he then lists what he thinks are and what are not such records.

The prayer of his bill is that the court construe all sections of the Code applying to his rights and duties, particularly § 58-916 "together with said mandamus;" that he be declared to have the right to retain from time to time at Ashland such tax tickets, copies of assessment books "and

other unofficial records" as he deems proper, and the right to collect taxes and licenses at Ashland and for this purpose to assign to the Ashland office such personnel of his treasurer's office as he may deem proper.

By its order of November 3, 1952, as amended by its order of December 18, referred to in respondent's bill, the Board directed respondent to move all of his personnel except one from the Ashland office to the official office at the courthouse, provided that from November 15 to December 5, 1952, he might transfer such personnel to Ashland for the collection of taxes and that after December 5, 1952, all tax bills, receipts and dog licenses, including those for the town of Ashland, should be kept at the official office at Hanover. On January 5, 1953, the Board entered a further order rephrasing but not materially changing the orders of November 3 and December 18, but adding that the Board had no objection to the sale of dog licenses at Ashland, as well as at Mechanicsville, provided that they were also sold at the official office at Hanover.

Again on January 12, 1953, in an effort to reach an agreement with respondent, the Board entered an order setting forth that if Weems would dismiss his suit it would be agreeable to the Board that he keep all of the official records and accounts of the treasurer's office at the treasurer's office at the courthouse and maintain the treasurer's office there in such a manner that anyone could go to that office between nine o'clock and five o'clock of every business day and transact any business pertaining to the treasurer's office, including the signing of checks and making up all official mail. Weems rejected that proposal.

It is quite apparent from respondent's bill for a declaratory judgment that he thereby seeks to have § 58-916 of the Code and the mandamus of this court construed so as to give him the right in effect to maintain the treasurer's office of Hanover county at Ashland as he is now doing. As pointed out above, that matter has been fully and finally adjudicated by this court, and this court's order on the sub-

ject cannot be altered, modified, enlarged or diminished in any manner or degree in the declaratory judgment proceeding or otherwise. *Miller* v. *Turner*, 111 Va. 341, 68 S. E. 1007; 1 Mich. Jur., Appeal and Error, § 343, p. 775; *Re Sanford Fork & Tool Co.*, 160 U. S. 247, 16 S. Ct. 291, 40 L. ed. 414. The judge of the circuit court does not in his answer and briefs question these established principles.

By no construction or other method is the respondent to be allowed to evade the provisions of § 58-916 that he shall maintain the treasurer's office at the county seat and shall keep therein all his official accounts and records, nor to change or modify in any respect the order of this court so construing that section and directing respondent to maintain the treasurer's office at the county seat and to remove thereto the records of the treasurer's office. The words "official accounts and records," as used in the statute, and the word "records," as used in the opinion and order of this court, mean all the accounts, records, books and papers relating to the office of treasurer and customarily used in the performance of the duties and the transaction of the business of that office.

While the duty of the respondent to maintain the treasurer's office at the county seat and to keep there the records of that office as defined above is settled, the statute law recognizes and declares the duty of the treasurer to go to convenient public places in the magisterial districts of his county for the purpose of there receiving the State taxes and county levies, unless such sittings are dispensed with by the Board. Code § 58-962. For that purpose it is necessary, of course, that he take with him from the treasurer's office the papers and records needed in the proper performance of that duty.

The powers of the Boards of Supervisors are fixed by statute and are only such as are conferred expressly or by necessary implication. *Old* v. *Commonwealth*, 148 Va. 299, 138 S. E. 485. They do not include the power to direct the manner and method to be followed by the treasurer in

performing the duties of his office, which are also fixed by law. Both the members of the Board and the treasurer are public officers, elected by the people and obligated to discharge and perform all the duties of their offices faithfully and impartially. They have no right to allow official acts to be influenced by personal feelings.

The requirement of the order and mandamus of this court is that the office of treasurer be maintained at the county seat and that the records of the office be kept there. Within that requirement is sufficient area for the treasurer to perform his duties faithfully and efficiently. The Board has no authority to control how he shall perform those duties within that area. So far as the orders of the Board undertake to exercise that control they are unauthorized and of no effect.

Within the limits herein stated the jurisdiction of the Circuit Court of Hanover county may be legally exercised in the declaratory judgment proceeding and the offices of the judge of that court may well be used to compose in the public interest the differences between the holders of these important public offices.

*Writ of prohibition denied.*
*Judgment for contempt entered.*