# Richmond

L. W. Holt v. Commonwealth of Virginia.

E. A. Dawley, Jr. v. Commonwealth of Virginia.

June 15, 1964.

Record Nos. 5630, 5631.

Present, Eggleston, C. J., and Spratley, Buchanan, Whittle, Snead and I'Anson, JJ.

*David Y. Klein (Albert Best; Benjamin Friedman; John Jackson, Jr.; Harold L. White, on brief), for the plaintiffs in error.*

*Francis C. Lee, Assistant Attorney General (Robert Y. Button, Attorney General, on brief), for the Commonwealth.*

WHITTLE, J., delivered the opinion of the court.

These cases are before the court upon separate writs of error awarded appellants Holt and Dawley to judgments entered against them in the Circuit Court of Hopewell on the 30th day of January, 1962, wherein they were summarily held to be in contempt of court and fined $50.00 each.

The following material facts are disclosed:

On January 30, 1962, the Circuit Court of the City of Hopewell had before it a contempt citation against Dawley, which grew out of Dawley's conduct in the trial of a law suit then pending, styled *Hopewell News* v. *Curtis Harris, et al.* Dawley was represented in this contempt proceeding by L. W. Holt, his law partner.

The question before the court at the time involved a motion "for change of venue" which had been signed by Dawley and filed on January 17, 1962. The motion for the change of venue was read to the court and argued by Holt, Dawley's attorney.

It will be noted that the present contempt action against Holt and Dawley arose out of the motion for change of venue filed in the (first) contempt action against Dawley. In this connection the following occurred:

"The Court: I believe you have a plea filed here for change of venue?

"Mr. Holt: Yes sir.

"The Court: I am ready to hear you on that.

"Mr. Holt: May it please the court, the defendant, E. A. Dawley, Jr., represents as follows on a motion for change of venue * * * ".

Here attorney Holt proceeded to read the long and involved written motion for the change of venue, which motion contained the following:

" * * * [T]hat the said Honorable Judge Carlton E. Holladay who presided in the libel suit [Hopewell News v. Curtis Harris, et al.] and who now fails and refuses to disqualify himself as judge in the

contempt trial of the defendant, E. A. Dawley, Jr., has with respect to said contempt action, and is now in effect and/or in fact acting in the capacity of police officer, chief prosecution witness, adverse witness for the defense, grand jury, chief prosecutor and judge; that in addition to the foregoing the said Judge Carlton E. Holladay did intimidate and harass the lawyer representing E. A. Dawley, Leonard W. Holt, Esquire, the effect of which is to seriously hamper the efforts of said Leonard W. Holt in defending the said E. A. Dawley, Jr.,; that said harassment and intimidation arises out of and is connected solely with Leonard Holt's participation in the defense of E. A. Dawley in the contempt action; that part of the harassment and intimidation occurred at the hearing in this matter on January 8, 1962, at which time the court revealed that it had been making an independent investigation and inquiry of Mr. Holt's conduct and of the contempt offense. The Judge said that he would deal with Leonard Holt after he had dealt with E. A. Dawley. * * * "

After attorney Holt had read the motion for change of venue, embracing the above quoted words, and had argued the same, the following colloquy occurred between the court and counsel:

"The Court: As I understand it, you have filed a copy of the motion you substantially made in the record in the case here. I believe you read from that?

"Mr. Holt: That is correct.

"The Court: And it is signed by Mr. Dawley?

"Mr. Holt: That is correct, sir.

"The Court: Under his affidavit, and you appeared, of course as representing Mr. Dawley in the matter here today?

"Mr. Holt: I don't understand the nature of the question, sir.

"The Court: I notice that the pleading was filed apparently in person rather than by you as counsel.

"Mr. Holt: Well, it was signed by him. I think we have this situation, and the Court is well aware that he, under the Constitution of the United States, and Virginia, has the right to sign pleadings in his own behalf.

"The Court: I was just merely asking—I saw it was signed by him there and not signed by you as counsel, but you appeared here today as counsel.

"Is that correct? You have argued the motion, I understood that you appeared as counsel.

"Mr. Holt: I think that's what I have done, sir. It's before the Court.

"The Court: Before the Court. May I ask a further question here. You have read, of course, that he cannot get a fair and impartial trial.

"Of course, the issue is still pending as to whether or not he will be tried by jury or by the Court. Do you wish to elaborate on that? I'm not asking that you do. I just want to know what you—* * *. If you want to elaborate on it, I would like to give you an opportunity. If you don't, that is perfectly all right.

"Mr. Holt: I'm not—May I respectfully—You see—Elaborate on it yet—I have some trouble hearing sometimes, sir.

"The Court: On the motion for change of venue, does that apply whether your client would be tried before a jury or before the Court? Does it apply in both cases?

"Mr. Holt: We say it would apply."

\* \* \* \* \* \* \*

"[Court] At this time I might say that I do not see how this Court can pass unnoticed the matters and things that have been presented (sic) to the Court by Mr. Dawley in a plea filed in the Court and presented here in Court and by Mr. Holt as his counsel and argued in court. I think that the plea is contemptuous and I think the argument is contemptuous.

"At this time both E. A. Dawley, Jr., and Leonard W. Holt are held and adjudged summarily to be in contempt of this Court.

"I will take under advisement the punishment and advise you of it during the day.

"Court will adjourn for lunch.

"Mr. Holt: Please, before the Court adjourns, may we get the specificity on the part of the Court regarding what is considered in the pleading, if anything, contemptuous? I think under the laws of the Commonwealth and United States we are in this position—that if something has been said which is contemptuous, there be elements of intent that should be present, and if the element of intent be present, and there are certain things which flow under it in terms—

"The Court: I don't think that you need any specification or bill of particulars on that. I think you can read it, Mr. Dawley can read it, and I think it is plain to the people who are in the courtroom that the remarks are contemptuous, and you summarily have been held in contempt of court."

Following the citation for contempt, the court overruled the motion for the change of venue.

Thereafter, Mr. Holt undertook to address himself to the question of contempt. In his long and rather incoherent argument, Holt insisted that the court point out the matters contained in the motion which were thought to be contemptuous.

Whereupon the court certified the proceedings which transpired as follows:

"The Court read from the motion and pointed out, among other things therein, that both E. A. Dawley, Jr., and his counsel had said that the Court 'is now in effect and/or in fact acting as police officer, chief prosecution witness, adverse witness for the defense, grand jury, chief prosecutor and judge'; that both parties had made the accusation that the Court had harassed and intimidated counsel for E. A. Dawley, Jr., viz, Leonard W. Holt; that paragraph (10) of the motion contained the statement that a fair and impartial trial could not be had in the Circuit Court of the City of Hopewell; that the record contained accusation that Mr. Holt's client, E. A. Dawley, Jr., could not get a fair and impartial trial applied to both trial before a jury and trial before the court. The court then pointed out the nature of the limited apology."

Whereupon the court then fined both E. A. Dawley, Jr. and Leonard W. Holt $50.00 each for the contempt of which they had been summarily attached and found guilty.

While appellants have filed six assignments of error to the action of the trial court, there is only one essential question presented in this case, i.e., whether the motion for change of venue, and argument thereon, presented in open court on January 30, 1962, constituted contempt of court, warranting summary judgment. Stated differently, the question is—Does the trial court possess the power to defend itself against abusive and contemptuous attack by party litigants and their counsel even though the attacks take the form of pleadings filed and argued in the proceeding? Here we must consider:

(1) The power of a court to punish for contempt;
(2) Whether the contemners' actions were contemptuous;
(3) Whether they purged themselves of that contempt, and
(4) Whether summary action was appropriate.

The power of the court to punish for contempt can no longer be challenged. Such power is inherent in the nature and constitution of a court. It is a power not derived from any statute, but arising from the exercise of all other powers. Without such power the administration of the law would be in continual danger of being thwarted by the lawless. The power to fine and imprison for con-

tempt is incident to every court of record. Such courts *ex necessitate rei* have the power of protecting the administration of justice with a promptitude calculated to meet the exigency of the particular case. The right of punishing contempts by summary conviction is a necessary attribute of judicial power. See *Commonwealth* v. *Dandridge* (1824) 2 Va. Cas. (4 Va.) 408; 4 M.J., Contempt, Sec. 5, pages 244-245.

"That the English courts have exercised the power in question from the remotest period does not admit of doubt. Said Chief Justice Wilmot: 'The power which the courts in Westminster Hall have of vindicating their own authority is coeval with their first foundation and institution; it is a necessary incident to every court of justice, whether of record or not, to fine and imprison for a contempt acted in the face of the court; and the issuing of attachments by the Supreme Court of Justice in Westminster Hall for contempts out of court, stands on the same immemorial usage which supports the whole fabric of the common law; it is as much the *lex terrae*, and within the exception of Magna Charta, as the issuing of any other legal process whatsoever.' " *Carter* v. *Commonwealth*, 96 Va. 791, 806, 807, 32 S.E. 780, 45 L.R.A. 310.

3 Campbell's Lives of Chief Justices, 153; *United States* v. *Hudson*, 7 Cranch (11 U.S.) 32, 3 L. ed. 259; *Wells* v. *Commonwealth*, 21 Gratt. (62 Va.) 500.

The ingrained principles above recorded had their origin in the genesis of the court itself, having been settled long before the founding of this country. The moment the courts of the United States were called into existence and invested with jurisdiction over any subject, they became possessed of the power to protect themselves and the dignity and authority of the court. *Ex parte Robinson*, (Ark.) 86 U.S. (19 Wall.) 505, 22 L. ed. 205.

One of the earliest, if not the earliest, United States cases was decided in 1788. This involved a contempt citation against a newspaper, the style of the case being *Respublica* v. *Oswald*, 1 U.S. (1 Dall.) 319, 1 L. ed. 155, 1 Am. Dec. 246. There, the Chief Justice had this to say:

"Having yesterday considered the charge against you, we were unanimously of opinion, that it amounted to a contempt of the Court. Some doubts were suggested, whether even a contempt of the Court was punishable by attachments; but, not only my brethren and myself but, likewise, all the judges of *England*, think, that without this power no Court could possibly exist;—nay, that no *contempt*

could, indeed, be committed against us, we should be *so truly contemptible.* The law upon the subject is of immemorial antiquity; and there is not any period when it can be said to have ceased, or discontinued. On this point, therefore, we entertain no doubt."

See *Board of Supervisors* v. *Bazile*, 195 Va. 739, 80 S.E. 2d 566, 12 Am. Jur., Contempt § 3, at page 390, 17 C.J.S. § 8, page 16, et seq.

■ We next consider the question, was contemners' attack upon the trial court contemptuous, warranting summary punishment?

We hold that it was. When one considers the incidents surrounding the motion for change of venue, the affidavit and argument thereon, it would be difficult to imagine a more callous attack upon a court by an attorney who is privileged to practice his profession therein. The language employed was both contemptuous and contemptible. It was intended to be insulting. The motion for change of venue was simply used as a vehicle to heap insults upon the court, a studied attempt to smear the judge. 12 Am. Jur., Contempt, *supra,* § 11, page 396. He was charged with:

(1) Acting as police officer, chief prosecution witness, adverse witness for the defense, grand jury, chief prosecutor, and judge;

(2) Harassing and intimidating counsel for the accused;

(3) Being unable to conduct a fair and impartial trial.

It would strain one's imagination to picture a clearer example of contempt, either at common law or under the statute. However, it is unnecessary to consider whether the conduct of the appellants would warrant summary punishment at common law. Their offense comes within the purview of Section 18.1-292 of the Code of Virginia 1950 as amended. That section prescribes the instances in which the court may punish summarily for contempt. It reads in part as follows:

"The courts and judges may issue attachments for contempt, and punish them summarily, only in the cases following:

"(1) Misbehavior in the presence of the court, or so near thereto as to obstruct or interrupt the administration of justice;

\* \* \* \* \* \* \*

"(3) Vile, contemptuous or insulting language addressed to or published of a judge for or in respect of any act or proceeding had, or to be had, in such court, or like language used in his presence and intended for his hearing for or in respect of such act or proceeding;

"(4) Misbehavior of an officer of the court in his official character."

We thus have the very narrow question of whether the motion for change of venue, with affidavit attached, together with the argument thereon, constitutes an offense within the meaning of the statute.

Both appellants are attorneys. They are officers of the court. It was their duty as attorneys to maintain the respect due the court; a duty imposed upon them which clearly should exceed that imposed upon the public generally. This duty should not be looked upon lightly and cannot be shirked under the guise of representing the interests of a party litigant. The attorney's privilege to appear in court is not a license to attack the court; nor does the privilege of filing pleadings and motions grant a license to insult, abuse and slander the court, however unhappy the client and attorney may be with the particular court. See numerous cases annotated on this point in 18 A.L.R. 213; 55 A.L.R. 530; 52 A.L.R. 2d 1297. See also Dangel "Contempt", § 118, at page 58; 12 Am. Jur., Contempt, *supra*, § 13, at pages 397-398.

The statutory authority for change of venue in criminal cases in Virginia is codified as § 19.1-224 of the Code and we cannot believe that the motion for a change of venue in the [first] contempt case against Dawley [for his alleged actions in interfering with the process of the court] was addressed, in good faith, to the sound discretion of the trial court under that statute. We have been referred to no statute in Virginia which would require a judge to disqualify himself in a contempt proceeding.

Even if there existed grounds for compelling disqualification of the trial judge in such proceeding, it is well settled that a motion directed to that ground must confine itself to pertinent facts relied upon to establish the ground. The written motion cannot be used as a vehicle for launching a personal attack upon the integrity or honor of the court. 12 Am. Jur., Contempt, *supra*, § 13, page 398; 29 A.L.R. 1273.

■ We further hold that the contempt was not purged by the supposed disclaimer of intent by these appellants. Nowhere is it pointed out by appellants wherein they attempt to purge themselves of contempt. The record discloses that in addressing the court Holt said this:

"And I think that the Court will attempt to be fair and will once again allow an opportunity to be made to respond to this.

"I think that the Court, for example, right now I can say to the Court on behalf of both Mr. Dawley and myself that if perchance these statements viewed, which are in these documents—viewed

objectively tend to be—I don't know exactly what statements the Court has reference to—But whatever it is, assuming that objectively they tend to lend themselves to such a conclusion, we at this point would disavow any subjective intent, and to that extent would apologize to the Court.

"But we feel that if this statement is made, and it has been made, that the intent was not to say that subjectively the conditions therein are absolutely true because of necessity to be able to say this subjectively we would have to know what is going on in the minds of various citizens in Hopewell.

"When we don't know subjectively because we were not in their minds and have not been in their minds at the times the various discretions have been made—So we at this point, without knowing what the statements are that are disturbing the Court, we will determine it a general document in terms to any extent that he feels that it is contemptuous of the Court, we say that our intent was not to be contemptuous; and if objectively this result is reached by just looking at them without going into our inward intent, we would say we apologize. * * * "

These unintelligible remarks consume several pages of the record, and we cannot gather from what the attorney says that he is in any way attempting in good faith to apologize.

The general rule is that when contemptuous language is used in a pleading, disclaimer of intentional disrespect will not purge the attorney filing the pleading of contempt. See Dangel "Contempt", § 118, page 58, *supra*. See also *People* v. *Sherwin*, 334 Ill. 609, 166 N.E. 513; 29 A.L.R. 1268; *Redman* v. *State*, 28 Ind. 205; *Mahoney* v. *State*, 33 Ind. App. 655, 72 N.E. 151, 104 Am. St. Rep. 276; 12 Am. Jur., § 73, at page 439.

It is clear to us that the pretended apology or disclaimer of intent did not purge these appellants of the shocking attack upon the integrity and honor of the trial court. In this connection we cannot overlook the fact that the trial court had the opportunity to observe the defendants at the time of the so-called apology, and even if words of atonement could wipe out the express and unmistakable slander and personal attack upon the judge, only he was in a position to determine the sincerity of the words of atonement. *Saunders* v. *Commonwealth*, 186 Va. 1000, 1010, 45 S.E. 2d 307; *Board of Supervisors* v. *Bazile, supra*, 195 Va. 739, 745, 80 S.E. 2d 566; *Carter* v. *Commonwealth, supra*, 96 Va. 791, 802, 803, 32 S.E. 780; 17 C.J.S., Contempt, *supra*, § 8, page 21.

Lastly, appellants have sought to inject into this proceeding the suggestion that their constitutional rights are impinged upon by the summary manner in which the trial court called them to task.

Their arguments are devoted to a dissertation on questions which do not exist in this case and, even if present, have long been settled. The conduct for which they are being punished was a direct and open criminal contempt of court and as such was punishable summarily by the court when committed. No constitutional guaranties relating to indictment, rights to counsel, and trial by jury are here involved, and appellants' effort to raise these questions indicate either a lack of knowledge of the established law, or a novel attempt to avoid the force of the doctrine of *stare decisis* on a point where the law has been settled for hundreds of years.

In *Local 333B, United Marine Division of I.L.A. (A.F.L.)* v. *Commonwealth*, 193 Va. 773, 71 S.E. 2d 159, it is said:

"(1) Proceedings for contempt of court are of two classes,— those prosecuted to preserve the power and vindicate the dignity of the court and those to preserve and enforce the rights of private parties. The former are criminal and punitive in their nature; the latter are civil, remedial and coercive in their nature, and the parties chiefly interested in their conduct and prosecution are those individuals for the enforcement of whose private rights and remedies the original suit was instituted. *Roanoke Water Works Co.* v. *Roanoke Glass Co.*, 151 Va. 229, 144 S.E. 460; *Deeds* v. *Gilmer*, 162 Va. 157, 261, 174 S.E. 37; *Drake* v. *National Bank of Commerce*, 168 Va. 230, 190 S.E. 302, 109 A.L.R. 1517; *Gloth* v. *Gloth*, 158 Va. 98, 163 S.E. 351; * * * 4 Michie's Jur., Contempt, sec. 3, p. 242; 12 Am. Jur., Contempt, sec. 6, p. 392." *Gompers* v. *Bucks Stove, etc. Co.*, 221 U.S. 418, 441, 31 S. Ct. 492, 55 L. ed. 797, 34 L.R.A. (N.S.) 874; *Bessette* v. *Conkey Co.*, 194 U.S. 324, 329, 24 S. Ct. 665, 48 L. ed. 997.

The suggestion that appellants were entitled to a trial by jury is fully answered in the recently decided case (April 6, 1964) of *United States* v. *Barnett*, 376 U.S. 681, 692, 696-697, 84 S. Ct. 984, 12 L. ed. 2d 23. In the majority opinion written by Mr. Justice Clark it is said:

"Finally, it is urged that those charged with criminal contempt have a constitutional right to a jury trial. This claim has been made and rejected here again and again. Only six years ago we held a full review of the issue in *Green* v. *United States*, 356 U.S. 165 (1958). We held there that '[t]he statements of this Court in a long and unbroken line of decisions involving contempts ranging from misbe-

havior in court to disobedience of court orders establish beyond peradventure that criminal contempts are not subject to jury trial as a matter of constitutional right.' At 183. Nor can it be said with accuracy that these cases were based upon historical error. It has always been the law of the land, both state and federal, that the courts —except where specifically precluded by statute—have the power to proceed summarily in contempt matters."

"And in *Eilenbecker* v. *District Court*, 134 U.S. 31 (1890), a contempt was based on the violation of a court order. Mr. Justice Miller said: 'If it has ever been understood that proceedings according to the common law for contempt of court have been subject to the right of trial by jury, we have been unable to find any instance of it. It has always been one of the attributes—one of the powers necessarily incident to a court of justice—that it should have this power of vindicating its dignity, of enforcing its orders, of protecting itself from insult, without the necessity of calling upon a jury to assist it in the exercise of this power.' At page 36."

See also *In re Debs*, 158 U.S. 564, at pages 594 and 595, 15 S. Ct. 900, 39 L. ed. 1092; *United States* v. *Shipp*, 203 U.S. 563, 27 S. Ct. 165, 51 L. ed. 319.

It is evident that no constitutional rights of these appellants have been violated. Clearly, they were not entitled to trial by jury in this contempt proceeding. And there is nothing of record which shows any deprivation of appellants' right to be tried by an unbiased and impartial judge. The hearing afforded appellants in this instance satisfied all requirements of due process. See *Ungar* v. *Sarafite*, 376 U.S. 575, 84 S. Ct. 841, 11 L. ed. 2d 921 (decided March 30, 1964); *Nilva* v. *United States*, 352 U.S. 385, 77 S. Ct. 431, 1 L. ed. 2d 415; *Tumey* v. *Ohio*, 273 U.S. 510, 47 S. Ct. 437, 71 L. ed. 749, 50 A.L.R. 1243.

For the reasons stated[1] the judgment of the Circuit Court of the City of Hopewell is

*Affirmed.*

---

[1] For other cases and texts of interest see:
*Sacher* v. *United States*, 343 U.S. 1, 72 S. Ct. 451, 96 L. ed. 717.
*Cartwright's case*, 114 Mass. 230, at page 238.
*Gompers* v. *Bucks Stove Co.*, 221 U.S. 418, 31 S. Ct. 492, *supra*.
*Ex parte Savin*, 131 U.S. 267, at 277, 9 S. Ct. 699, 33 L. ed. 150.
*Ex parte Terry*, 128 U.S. 289, at page 309, 9 S. Ct. 77, 32 L. ed. 405.
4 Blackstone's Com. 286.
Dangel "Contempt" § 445, page 205; § 449, pages 212 and 213 and cases there cited.