# Richmond

JACK H. HENSON v. COMMONWEALTH OF VIRGINIA.

January 16, 1936.

Present, All the Justices.

The opinion states the case.

*B. B. Campbell, John D. Easley* and *J. B. Hoge,* for the plaintiff in error.

*Abram P. Staples, Attorney-General, Edwin H. Gibson, Assistant Attorney-General,* and *Joseph L. Kelly, Jr., Special Assistant,* for the Commonwealth.

GREGORY, J., delivered the opinion of the court.

Jack H. Henson was indicted and convicted of manslaughter and his punishment fixed at a term of four years in the penitentiary. The trial court sustained the conviction.

On the evening of the 20th day of September, 1934, about seven o'clock, Rose Scott, a colored woman, in attempting to cross the street at the intersection of Fifth and Federal streets, in the city of Lynchburg, Virginia, was run down by the driver of an automobile and almost instantly killed. At this particular crossing a traffic light had been provided and she was crossing between two white lines that had been marked off for pedestrians. She was further protected by the green light, which was in her favor, and gave her the right-of-way to cross at this particular intersection.

The driver of the automobile who was solely responsible for the death of Rose Scott, failed to heed the traffic signal, drove into her with the right side of the automobile and carried her approximately seventy-five feet, when she was thrown off to the pavement. She bled freely after being struck. The driver failed to stop.

On the next afternoon, Henson, the accused, was charged with being the driver of the car and lodged in jail.

At the trial the sole defense of the accused was that at the time of the accident he was in Rivermont, more than a mile from the scene, at the store of T. A. Davis. He denied any knowledge of the occurrence.

The automobile was being driven at a rate of speed from thirty to forty-five miles per hour at the time. Witnesses were able to get the first three numbers of the license plates of the car and to note that it was a dark

colored closed machine, either a Chevrolet, Pontiac or Plymouth. It was not disputed that the automobile was being operated in a grossly negligent manner. The accused relied solely upon an alibi.

Two witnesses testified that they saw the accident and they positively identified the accused as the driver of the car. Another witness testified that immediately before the accident and just before the point of the accident was reached he saw the accused driving recklessly in that direction.

In the petition, the evidence bearing on the question of the identity of the driver of the car is dealt with elaborately and at great length. The accused testified that he was at Davis' store at the time the accident occurred. In this statement he was sustained by other witnesses but this question was resolved against him by the jury.

There were a number of incriminating circumstances shown. The accused was first connected with the crime by reason of a conversation which he had over the telephone at a filling station, and which was overheard by L. H. Stevens, a witness. Stevens testified that he was at the filling station near the telephone, and while waiting for the accused to finish using the telephone, his attention was attracted by the accused's remark that he was "laying low." Stevens also testified that the accused said over the telephone "I have got twenty-nine hundred and some dollars in the bank and am going to get it out and am going to get out of town." He further testified that the accused said in this same conversation that while his car was parked on the street someone ran into it, bent the headlight, broke the radiator and that the car was being repaired. Stevens also said that the accused stated that "I have got a whole lot to tell you. You don't know the half of it."

Stevens notified the police department of what he had heard and as a result officers discovered the automobile of the accused in a garage where it was being repaired. Later the accused was arrested. The car was a dark col-

ored Chevrolet coach with light colored wire wheels, bearing license number 218-682. The right headlight had been knocked off, the hood was "bucked up" and the radiator shell was bent. On the right hand side of the fender, spring, axle and radiator shell were red spots, which the officers understood to be blood. An analysis showed it to be human blood.

The direct testimony and circumstantial evidence are certainly sufficient to sustain the verdict and judgment of the court and we think that there is no merit to the contention that the verdict is contrary to the law and evidence.

Unless the trial court committed some prejudicial and reversible error of law during the progress of the trial we will be compelled to affirm the judgment here complained of.

There are several assignments of error.

Witness Davis, who operated a store testified that at the time of the accident the accused was in his store, which was a mile away. Davis was asked by the Commonwealth's attorney on cross-examination if he had not offered, several months prior to the present trial. to buy a ticket for a lady to leave Lynchburg if she would drop a charge she had theretofore made against the accused for cursing and abusing her, to which he replied in the negative. Later, a Mrs. Read was called by the Commonwealth, and over the objection of the accused, was allowed to testify that Davis had offered to pay her train fare to New Jersey if she would absent herself from court on that occasion. She also testified that he offered to pay any fine that might be imposed upon her for failing to appear against the accused for his abuse of her for which she had procured the warrant.

The accused contends that the testimony of Mrs. Read should not have been admitted because it amounted to the contradiction of witness Davis upon a collateral matter; that a witness cannot be impeached upon a collateral matter. We cannot agree with this contention. The bias of a witness, like prejudice and relationship, is

not a collateral matter. The bias of a witness is always a relevant subject of inquiry when confined to ascertaining previous relationship, feeling and conduct of the witness. Wharton's Criminal Evidence (10th Ed.) section 215.

Again, the same author in section 488, tells us that on cross-examination great latitude is allowed and that the general rule is that anything tending to show the bias on the part of a witness may be drawn out.

If, as a matter of fact, Davis had attempted a few months previously to entice Mrs. Read away from the jurisdiction of the court so that she would not be present to prosecute Henson, the present accused, for his (Henson's) abuse of her, this fact would certainly be material as touching the credibility of Davis' testimony upon the present trial where Henson, the same accused, is being again tried. Such interest of Davis manifested in Henson's behalf only a few months prior to the present case was a material subject of inquiry and we think no error was committed in its admission.

What we have just stated is not intended to impinge upon the rule that one is not permitted to impeach a witness upon a collateral issue, nor as modifying the rule applied in the case of *Norfolk & Western Ry. Co.* v. *Carr,* 106 Va. 508, 56 S. E. 276. The latter case is readily distinguishable on the facts. There the court ruled that extended cross-examination on a particular fact was discretionary with the court. In the case at bar, a matter affecting the bias or credibility of a witness was drawn out in the manner already detailed.

■ Mrs. Read's testimony was again brought in question when the court recalled her and questioned her further about witness Davis attempting to have her leave Lynchburg at the time of the former charge against Henson. When it developed that the former case was in the police court, the trial court said, addressing the Commonwealth's attorney: "I suggest that the Commonwealth communicate that fact to Judge McCarron (Judge of Police Court). If it was in this court I would issue a bench

warrant for the man." Counsel for the accused excepted to the comment of the court in the presence of the jury, whereupon the court said:

"The court isn't disposed to believe it either. It isn't passing on the truth or falsity of it, but if any witness comes into this court and testifies under oath that any person has offered that witness a bribe to absent herself from the process of the court it is a proper case to be brought, in the judgment of this court, to the attention of the court whose process has apparently been brought into contempt. I am not passing and not meaning to intimate that Mr. Davis is in any way guilty.

"By Judge Campbell (counsel for accused): He has testified on his oath that it was not so.

"By the court: It is a matter for consideration by the proper tribunal whether or not there has been a contempt of court, and, gentlemen of the jury, not passing on what is the truth in that case, but the court does think the charge made by this witness is one that ought to be investigated and it is for that purpose only that it is referred to the Municipal Court. Subornation of perjury, if it exists, tends to draw out the well-springs of justice and it simply cannot go unnoticed when brought to the attention of the court when the charge is made. The court is not passing on the truth or falsity of it at this time.

"By Judge Campbell: You ought to also investigate her statement under oath.

"By the court: The whole matter is to be under investigation. I am not commenting upon the testimony of this witness or that of Mr. Davis. That is a matter for the jury.

"By Judge Campbell:

"Q. Mrs. Read, you say Mr. Davis offered to pay any fine that might be put on you?

"A. He certainly did. I have a witness to that."

The statement of the court, in the light of what transpired at the time, is not error.

■ After the trial was completed, it appeared from cer-

tain affidavits that Mrs. Read, before she testified, had a conversation with one Ford who was a juror. This took place during a recess of court. For this, the court issued a rule against both of them to show cause why they should not be fined and imprisoned for contempt. Upon the hearing of the rule it appeared that Mrs. Read did not know that Ford was a juror. She told Ford, in answer to his inquiry, that she was there to testify against Henson on account of an assault made by him upon her in Davis' store. This was all that was said about the case. Later, Mrs. Read testified in the case and told the jury more elaborately about her charge against Henson. It clearly appeared that this incident was not communicated to the other jurors and that it had no effect upon juror Ford. In our opinion it was harmless. Of course we do not condone such conduct on the part of a juror. Ordinarily it should be condemned, but in this case it was not prejudicial.

The third assignment of error will not be reviewed because it was not made in compliance with Rule 22. If it were considered we would be compelled to hold that it was not reversible error. The extent of the examination of a witness placed on the stand by the court is a matter of discretion, and, unless it plainly appears that the discretion is abused, this court will not interfere.

The bounds within which counsel are limited in their argument has been repeatedly before us and nothing appears in this case to cause us to retreat from the rules already laid down or to restate them here.

It has been stated that there is no such thing as a perfect trial. Errors creep in regardless of great care on the part of the court. There may have been errors in this case, but from the evidence the jury were warranted in finding the accused guilty and the court justified in pronouncing judgment against him. In fact, two juries have found by their verdicts that the accused was the driver of the car that struck Rose Scott.

*Affirmed.*