Present: Kinser, C.J., Lemons, Goodwyn, Millette, Mims, and Powell, JJ., and Koontz, S.J.

BRUCE B. NOLTE, ET AL.

v.  Record No. 111490    OPINION BY JUSTICE DONALD W. LEMONS
                                          June 7, 2012
MT TECHNOLOGY ENTERPRISES, LLC

FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Margaret P. Spencer, Judge

Among the several issues we address in this appeal are whether the Circuit Court of the City of Richmond ("trial court") erred when it held that MT Technology Enterprises, LLC ("MT") satisfied the registration requirements of Code § 13.1-1057(A) and when it imposed sanctions, pursuant to Rule 4:12(b), against Cristol, LLC ("Cristol"), Bruce Nolte ("Nolte"), Andrew Miller ("Miller"), Koichi Fukuda ("Fukuda"), and Gregory Koenig ("Koenig").

## I. Facts and Proceedings Below

MT is a Delaware entity "that acquires intellectual property for license and sale and acquires equipment for lease or sale."  MT owns intellectual property rights related to the development of totally reflecting transmitter film ("TRT"), "one component of many hundred components that are used in liquid crystal display[s]" utilized in flat screen televisions, computers, and cell phones.  Ronald Trice ("Trice"), a patent attorney, and Dr. John Magno ("Magno"), a scientist, formed MT and held controlling membership interests.

Trice and Magno also formed Cristol, a Delaware entity, at approximately the same time they formed MT. Cristol is a technology development company in the business of developing high strength fibers. Together, Trice and Magno held a controlling membership interest in Cristol. Trice was a member of Cristol's Board of Managers ("Board") and served as the corporate secretary, and Magno was the Chief Executive Officer ("CEO") and chairman of the Board. Christopher Miller ("C. Miller"), Nolte, Miller, and Fukuda (together, the "minority owners") were also members of Cristol's Board.

In April 2008, MT licensed its rights to the TRT diffuser technology to Laser Energetics, Inc. ("LEI"). Pursuant to the agreement between MT and LEI, Magno owed duties to LEI for a period of two years. In August 2008, MT and Cristol executed a lease agreement. Pursuant to the agreement, MT leased equipment to Cristol for $3,000 per month.

The relationship between Magno and Trice and the minority owners began to decline. The minority owners insisted that Magno resign his position as CEO and from the Board. The minority owners would not agree to dedicate funding to product development, so Magno and Trice began looking for outside funding in the fall of 2008. They also considered selling Cristol. As a result, the minority owners accused Magno and Trice of performing "a coup" and trying to "take over" Cristol.

In January 2009, Miller sent an e-mail to the other minority owners and to Koenig, an employee of Cristol. Miller's email first discussed Magno's financial situation. Miller informed the minority owners and Koenig that he spoke with Magno about an upcoming Board meeting that Magno "should attend, for the sole purpose of discussing [Magno's] financial situation and determining what we can do to increase money in his pocket." Miller's email next discussed Magno's thoughts on Trice. Miller stated that "[Magno] is not yet willing to cut the ties with [Trice]," but after an outside patent lawyer reviews "the quality of [Trice's] work, [I] can take another round on chiseling away at [Trice's] and [Magno's] relationship."

A meeting of Cristol's Board was held, as scheduled, on February 4, 2009. When Magno arrived, Nolte, Koenig, C. Miller, and Cristol's attorney Charles W. Hundley ("Hundley") were present and Miller participated by telephone. These individuals told Magno that Trice was the reason for an unrelated company's bankruptcy, Trice was going to sue him, and he should not communicate with Trice. During the meeting, Trice called Magno on his cell phone, but the individuals at the meeting did not permit him to answer. Magno was directed to turn over his electronic mail ("e-mail") password so they could install an auto-forwarding device on his e-mail and

3

intercept any e-mails from Trice. They threatened to withhold Magno's paycheck unless he ended all communication with Trice, and Magno acceded to their demands.

Trice then arrived at the meeting where he was presented with a memorandum containing "a list of allegations against [him] followed by a list of demands." The demands included, among other things, resigning from Cristol's Board and ceasing all communications with Magno about Cristol.

After the February 2009 meeting, demands continued to be placed on Magno, which prevented him from fulfilling his duties to MT and to LEI. Additionally, Cristol stopped making regular payments to MT on the equipment lease.

In May 2009, Trice told Magno that he was going to file a lawsuit against Cristol and Cristol's Board. On June 2, 2009, MT filed a complaint against Cristol, Nolte, Miller, Fukuda, Koenig, C. Miller, Hundley, and Cherry, Seymour, Hundley & Baronian, P.C. ("Hundley's firm"). Miller threatened to withhold Magno's paycheck unless he signed a letter addressed to MT's counsel requesting that MT drop the lawsuit and an affidavit supporting Cristol's, Nolte's, Miller's, Fukuda's, Koenig's, C. Miller's, Hundley's, and Hundley's firm's special plea in bar. Magno testified that he was required to sign a letter and an affidavit, neither of which he drafted, in order to receive his paycheck.

MT subsequently filed an amended complaint in October 2009. Specifically, MT's five-count amended complaint alleged:

Count I - statutory conspiracy against Cristol, Nolte, Miller, Fukuda, Koenig, C. Miller, Hundley, and Hundley's firm;

Count II - tortious interference with economic expectancy in MT technologies against Cristol, Nolte, Miller, Fukuda, Koenig, C. Miller, Hundley, and Hundley's firm;

Count III - tortious interference with agreements between Magno and MT against Cristol, Nolte, Miller, Fukuda, Koenig, C. Miller, Hundley, and Hundley's firm;

Count IV - tortious interference with relationship between Magno and Trice against Cristol, Nolte, Miller, Fukuda, Koenig, C. Miller, Hundley, and Hundley's firm; and

Count V - breach of contract and unjust enrichment against Cristol.

In response, Cristol, Nolte, Miller, Fukuda, Koenig, and C. Miller jointly filed an answer, and together Hundley and Hundley's firm filed an answer.

Prior to trial, MT filed motions to compel answers to interrogatories and the production of documents from Cristol, Nolte, Miller, Fukuda, Koenig, and C. Miller because they had not timely responded to MT's discovery requests. MT also filed motions to compel Hundley and Hundley's firm to respond to

5

discovery requests.  The trial court granted MT's motions to compel in an April 21, 2010 order.[1]

Thereafter, in June 2010, MT filed a motion to show cause and a motion to compel and for sanctions as to Cristol, Nolte, Miller, Fukuda, Koenig, and C. Miller because they had not complied with the trial court's April 21, 2010 order.  The trial court concluded that Cristol, Nolte, Miller, Fukuda, Koenig, and C. Miller failed to fully respond to previously ordered discovery and ordered them to pay sanctions to reimburse MT for the costs of filing the motion to show cause.

MT then filed a motion for default judgment against Fukuda because he did not appear at his deposition and "his counsel indicated that he refuse[d] to travel from Japan for his deposition."  Cristol, Nolte, Miller, Fukuda, Koenig, and C. Miller continued to disregard the trial court's orders; consequently, MT filed a motion for sanctions pursuant to Rule 4:12.  The trial court held a hearing on these motions on September 23, 2010, and in an October 19, 2010 order: (1) granted MT's motion for sanctions against defendants Cristol, Nolte, Miller, and Koenig pursuant to Rule 4:12(b)(2)(B); (2) denied MT's motion for sanctions against C. Miller; and (3)

---

[1] That same day, the trial court entered an order dismissing the action with prejudice as to Hundley and Hundley's firm.

granted MT's motion for default judgment against Fukuda.[2] Specifically, in its sanctions order, the trial court prohibited Cristol, Nolte, Miller, and Koenig "from opposing the claims [MT] alleged within its Amended Complaint or introducing any evidence at trial in support of any of the defenses they alleged within their respective Answers to said Amended Complaint" and granted default judgment against Fukuda. (Emphasis added.)

The case proceeded to a jury against Cristol, Nolte, Miller, Fukuda, and Koenig (collectively, the "defendants") on all five counts. The trial court instructed the jury that prior rulings in this case prevent "the defendants from opposing [MT's] claims in the amended complaint and [prevent] the defendants from introducing any evidence at trial." The trial court interpreted its pre-trial ruling to bar defendants from cross-examining MT's witnesses.

Thereafter, the jury returned a verdict in favor of MT and awarded damages as follows:

| | |
|---|---|
| Cristol, LLC | $784,000 in compensatory damages |
| Koichi Fukuda | $700,000 in compensatory damages and $300,000 in punitive damages |
| Andrew Miller | $700,000 in compensatory damages and $350,000 in punitive damages |

---

[2] On October 29, 2010, ten days after the trial court entered its sanction order, MT moved to nonsuit defendant C. Miller, and the trial court entered a nonsuit order as to defendant C. Miller.

        Bruce Nolte            $700,000 in compensatory damages
                               and $350,000 in punitive damages

        Gregory Koenig         $700,000 in compensatory damages

MT moved to treble the compensatory awards, and the trial court
granted the motion.

        The defendants filed a "Motion To Set Aside Verdict And
For New Trial," objecting to: (1) the trial court's imposition
of sanctions against them; (2) the trial court's refusal of
defendants' proffered jury instructions; (3) the trial court's
denial of the defendants' right of cross-examination; and (4)
the trial court's withdrawal of liability issues from the
jury's consideration.  The defendants also filed a "Motion For
Judgment Notwithstanding The Verdict," arguing that the
evidence was insufficient to support either a claim of tortious
interference or a claim of statutory conspiracy.

        In March 2011, the defendants filed a "Supplemental Motion
For Judgment Notwithstanding The Verdict," alleging that MT
could not maintain the action because it failed to register and
obtain a certificate of authority ("certificate") as required
by Code § 13.1-1057(A) and because MT failed to register, it
had no business expectancies as a matter of law.  MT objected,
arguing that the defendants' supplemental motion was untimely
because the trial court ordered that post-verdict motions be
filed by January 5, 2011.

8

After a post-trial hearing in April 2011, the trial court denied the defendants' post-trial motions and entered judgment in favor of MT in the amounts awarded by the jury on May 18, 2011. On May 27, 2011, MT filed a motion to modify the May 18, 2011 order, claiming that "[f]ollowing the announcement of the jury verdict, [MT] moved the [trial court] to treble the compensatory damages awarded by the jury consistent with the business conspiracy statute" and "[t]he [trial court] did so but the ruling has not been memorialized via written Order." On June 8, 2011, the trial court entered an order trebling the compensatory damages without a hearing, which recited that the defendants did not file a response to MT's motion. The order recited in part:

> The treble damages ordered on the compensatory awards are:
>
> Cristol, LLC          $2,352,000
>
> Koichi Fukuda         $2,100,000
>
> Andrew Miller         $2,100,000
>
> Bruce Nolte           $2,100,000
>
> Gregory Koenig        $2,100,000

On July 7, 2011, the defendants filed an objection to the trial court's trebling of damages, arguing that: (1) the trial court denied the defendants due process of law because the order was entered without a hearing and without defendants'

input; (2) "only damages arising from a conspiracy claim may be trebled"; (3) the "jury's verdict did not specify what amount of damages, if any, were attributable to the conspiracy claim"; and (4) the trial court "engaged in impermissible speculation in trebling the entire verdict."

The defendants timely filed a petition for appeal, and we granted the appeal on the following assignments of error:

1. The trial court erroneously allowed MT Technology Enterprises LLC to maintain this action without a certificate of authority.

2. The trial court erred when it entered judgment for breach of a void contract and for tortious interference with business expectancies that could not exist as a matter of Virginia law.

3. The trial court abused its discretion in imposing an excessive sanction in response to a discovery dispute.

4. The trial court erroneously refused to permit the defendants to cross-examine the plaintiff's witnesses at trial.

5. The trial court erroneously withdrew the issue of liability from the jury.

6. The trial court erroneously entered judgment on the jury's verdict of tortious interference after MT Technology failed to adduce any evidence that defendants knew that an employee common to the two firms owed any duties to MT Technology.

7. The trial court erroneously granted judgment on the plaintiff's claim of statutory conspiracy.

8. The trial court erroneously trebled the damages awarded in this case, and erroneously entered an order to that effect without notice to the defendants, depriving them of due process.

## II. Analysis

### A. Standards of Review

The first assignment of error involves issues of statutory interpretation.

> [A]n issue of statutory interpretation is a pure question of law which we review de novo.  When the language of a statute is unambiguous, we are bound by the plain meaning of that language.  Furthermore, we must give effect to the legislature's intention as expressed by the language used unless a literal interpretation of the language would result in a manifest absurdity.  If a statute is subject to more than one interpretation, we must apply the interpretation that will carry out the legislative intent behind the statute.

Conyers v. Martial Arts World of Richmond, Inc., 273 Va. 96, 104, 639 S.E.2d 174, 178 (2007) (citations omitted).

The third and fourth assignments of error involve the review of a sanction imposed by the trial court, which we review for an abuse of discretion.  Flora v. Shulmister, 262 Va. 215, 220, 546 S.E.2d 427, 429 (2001).  We have stated that

> [a]n abuse of discretion . . . can occur in three principal ways: when a relevant factor that should have been given significant weight is not considered; when an irrelevant or improper factor is considered and given significant weight; and when all proper factors, and no improper ones, are considered, but the court, in weighing those factors, commits a clear error of judgment.

Landrum v. Chippenham & Johnston-Willis Hosps., Inc., 282 Va. 346, 352, 717 S.E.2d 134, 137 (2011) (quoting Kern v. TXO Prod. Corp., 738 F.2d 968, 970 (8th Cir. 1984)).

11

The sixth and seventh assignments of error challenge the sufficiency of the evidence. Pursuant to Code § 8.01-680, "[t]he standard of review for determining the sufficiency of evidence on appeal is well established. [The reviewing court] must examine the evidence in the light most favorable to [MT], the prevailing party at trial," and the trial court's judgment will not be disturbed "unless it is plainly wrong or without evidence to support it." Hedrick v. Commonwealth, 257 Va. 328, 340, 513 S.E.2d 634, 641 (1999) (citing Code § 8.01-680 and other supporting authorities).

## B. Code § 13.1-1057

The defendants assert that the "trial court erroneously allowed MT Technology Enterprises LLC to maintain this action without a certificate of authority." We disagree.

Code § 13.1-1057(A) states that "[a] foreign limited liability company transacting business in the Commonwealth may not maintain any action, suit, or proceeding in any court of the Commonwealth until it has registered in the Commonwealth." (Emphasis added.) While we have not yet interpreted at what point during a lawsuit a foreign LLC must fulfill the requirements in Code § 13.1-1057(A), we have interpreted a statute that imposed a registration requirement on a foreign corporation. See Phlegar v. Virginia Foods, Inc., 188 Va. 747, 749-51, 51 S.E.2d 227, 228-30 (1949). The statute at issue in

12

Phlegar contained language similar to the language in Code § 13.1-1057(A). Compare former Code § 4722(1)-3, with Code § 13.1-1057(A). The statute construed in Phlegar stated, in relevant part, "no action shall be maintained in any of the courts in this State by any such person, firm or corporation . . . until the certificate required by this act has been filed." 188 Va. at 750, 51 S.E.2d at 229 (emphasis added).

In Phlegar, the plaintiff commenced her action and, thereafter, the defendants appeared and filed "pleas of the general issue" contesting registration. Id. at 748, 51 S.E.2d at 228. Plaintiff later complied with the registration requirement. Id. The trial court dismissed the action and, in so doing, held "it was necessary to comply with the statute prior to the institution of the suit, and that the subsequent compliance therewith was not sufficient." Id. We reversed, concluding that "[i]t is not the right to begin the action, but the right to maintain it, that is withheld for failure to comply with its terms. It takes no right away from the offending party after compliance. When its terms are met, the barriers theretofore existing are removed." Id. at 751, 51 S.E.2d at 230 (emphasis added). In reaching this conclusion in Phlegar, we relied in part on our decision in Bain v. Boykin, 180 Va. 259, 23 S.E.2d 127 (1942), where we interpreted former Code § 4722(1)-3 and held a certificate "filed after the

13

bringing of [an] action and prior to the time of final judgment was a sufficient compliance with the statute."  Id. at 751, 51 S.E.2d at 229.

Here, MT is a foreign LLC subject to the registration requirements of Code § 13.1-1057(A).  The jury returned a verdict for MT in December 2010, MT obtained a certificate from the SCC in March 2011, and the trial court entered final judgment for MT in June 2011.  Pursuant to Code § 13.1-1057(A), MT "may not maintain any action . . . until it has registered in the Commonwealth."  (Emphasis added.)  "Maintain" is defined as "[t]o continue (something)," not to start or commence.  Black's Law Dictionary 1039 (9th ed. 2009).  Because MT obtained a certificate from the State Corporation Commission before the trial court entered its final order, our prior cases in similar matters compel us to hold that the trial court did not err in its interpretation of Code § 13.1-1057(A).

Additionally, the defendants assert that the "trial court erred when it entered judgment for breach of a void contract and for tortious interference with business expectancies that could not exist as a matter of Virginia law."

At oral argument, defendants' counsel stated:

> In assignment two, we've asked the court to find
> that there was no contract expectancy as a matter
> of law because the contract was made illegally,
> without the registration.

14

> In response, the Appellee has argued that there's nothing in the record that establishes this contract was, in fact, made in Virginia.
>
> I have looked through the short plain statement of 315 paragraphs in their complaint, and it appears to me that they're correct.

Because of the defendants' concession at oral argument, we will not address this assignment of error.

### C. The Trial Court's Sanction Order

"Rule 4:12(b) governs discovery abuses and provides for sanctions against a party who fails to comply with a court's order to provide or permit discovery. A trial court generally exercises 'broad discretion' in determining the appropriate sanction for failure to comply with an order relating to discovery." Walsh v. Bennett, 260 Va. 171, 175, 530 S.E.2d 904, 907 (2000) (citing Woodbury v. Courtney, 239 Va. 651, 654, 391 S.E.2d 293, 295 (1990)). As a result, we accord deference to the trial court's decision and will reverse only if the trial court abused its discretion. Flora, 262 Va. at 220, 546 S.E.2d at 429.

"The determination whether a trial court has abused its discretion is fact-specific." Walsh, 260 Va. at 175, 530 S.E.2d at 907. Moreover, "[i]n evaluating whether the trial court abused its discretion, 'we do not substitute our judgment for that of the trial court. Rather, we consider only whether the record fairly supports the trial court's action.' " AME

15

Fin. Corp. v. Kiritsis, 281 Va. 384, 393, 707 S.E.2d 820, 824 (2011) (quoting Beck v. Commonwealth, 253 Va. 373, 385, 484 S.E.2d 898, 906 (1997)).

In January 2010, MT filed motions to compel answers to interrogatories and the production of documents from Cristol, Nolte, Miller, Fukuda, Koenig, and C. Miller because the defendants did not timely respond to MT's discovery requests. The trial court granted MT's motions at a March 12, 2010 hearing, and the ruling was memorialized in an order dated April 21, 2010.

In June 2010, MT filed a motion to show cause and a motion to compel and for sanctions. The trial court considered these motions at a June 23, 2010 hearing. In an order dated July 6, 2010, the trial court ordered the defendants to pay MT: (1) "$1,000 in sanctions to reimburse [MT] for attorney's fees and costs incurred in filing the Motion to Show Cause and bringing it to the [trial court] for a hearing"; and (2) "$100 to reimburse the plaintiff for the attorney's fees and costs incurred as a result of counsel's inappropriate objections during the depositions of" C. Miller and Nolte.

In June 2010, MT also filed a motion for default judgment against Fukuda, and then in September of that year filed a motion for sanctions against the defendants pursuant to Rule 4:12. In an order dated October 19, 2010, the trial court

granted MT's motion for default judgment against Fukuda and MT's motion for sanctions against Cristol, Nolte, Miller, and Koenig pursuant to Rule 4:12(b)(2)(B). Specifically, the relief provided to MT under Rule 4:12(b)(2)(B) precluded Cristol, Nolte, Miller, and Koenig "from opposing the claims [MT] alleged within its Amended Complaint or introducing any evidence at trial in support of any of the defenses they alleged within their respective Answers to said Amended Complaint." (Emphasis added.)

Pursuant to Rule 4:12(b)(2),

[i]f a party . . . fails to obey an order to provide or permit discovery, . . . the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:

. . . .

(B) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting him from introducing designated matters in evidence.

(C) An order . . . rendering a judgment by default against the disobedient party[.]

Rule 4:12(b)(2)(B)&(C) (emphasis added). Cristol, Nolte, Miller, and Koenig repeatedly refused to respond fully to discovery and comply with the trial court's orders.

Significantly, upon the violation of a court order it was within the trial court's discretion to impose any specifically tailored sanctions "as are just" as stated in Rule 4:12(b)(2),

17

which allows a trial court to select from a range of orders illustrated in this Rule, including the most drastic sanction of striking a party's case or "rendering a judgment by default against the disobedient party" as provided in Rule 4:12(b)(2)(C). In this case, the trial court reserved that more severe sanction for Fukuda, who failed to appear at his deposition.[3]

The trial court's choice of sanction was not impermissible and, in the circumstances presented in this case, we hold that the trial court did not abuse its discretion in imposing this sanction in response to the sanctioned parties' failures to comply with discovery obligations under the Rules and pursuant to express orders of the court. However, we must separately analyze the scope of the sanction.

### D. Precluding the Defendants from Cross-Examining MT's Witnesses

At the beginning of the second day of a two-day jury trial, in response to a question posed by the jury, the trial court explained the scope of its October 19, 2010 sanction order to the attorneys, outside the presence of the jury, as follows:

---

[3] The record does not reveal that Fukuda was ordered to appear, which would have justified the entry of default judgment under Rule 4:12(b)(2)(C) and under Brown v. Black, 260 Va. 305, 310-11, 534 S.E.2d 727, 729-30 (2000). However, this issue was not raised on appeal and we will not consider it.

[I]t precludes the defendant[s] from introducing any evidence, which means the evidence the defendants introduce has to support [MT's] claims. The order specifically says introducing any evidence at trial in support of any of the defenses they allege. It doesn't say defenses as to liability. It doesn't say defenses as to damages. It says in support of any of the defenses they alleged. So it's clear the defendants' evidence has to support the plaintiff's amended complaint.

The order also . . . precludes the defendants from opposing the claims [MT] alleged within its amended complaint . . . . The order says claims. So it precludes the defendant[s] from opposing the claims in the amended complaint, and that means if we have to go over the amended complaint and identify everything that's a claim, then that's what we have to do, but it's clear that the jury is confused as you can see from the note, and it's clear that the Court has to correct any mistakes that the Court made yesterday in allowing the defendants to oppose claims plaintiff alleged in the complaint or introduce any evidence, whether that evidence came through testimony on cross-examination, whether that evidence came through witnesses.

The trial court told the parties it would "tell the jury that there have been prior decisions in this case which preclude the defendants from opposing the plaintiff's claims in the amended complaint and will preclude the defendants from introducing any evidence at trial. A denial is an opposition. An attack on credibility is an opposition." The trial court interpreted the sanction it imposed against Cristol, Nolte, Miller, and Koenig, precluding them "from opposing the claims [MT] alleged . . . or introducing any evidence at trial in

19

support of any of the defenses," to prohibit cross-examination of MT's witnesses.

Limiting a party's right to cross-examination as a sanction for discovery abuses is not without precedent. But, in the case of a default judgment rendered pursuant to Rule 3:19(c), the defendant is permitted to participate in the damages hearing by opposing and objecting to the plaintiff's damages proof, and itself "offer[ing] evidence regarding the quantum of damages." Here the trial court correctly found that a lesser sanction than default judgment was warranted. However, in the particular circumstances of this case, we hold that it was an abuse of discretion to prohibit cross-examination and introduction of evidence by defendants in the damages presentation to the jury. The sanction was too harsh.

E. Withdrawing the Issue of Liability from the Jury

The defendants assert that the "trial court erroneously withdrew the issue of liability from the jury." At the beginning of the second day of the jury trial, the trial court, in discussing MT's burden, stated that "[MT] still has to establish all of the elements and [MT] still has the burden of proof." The trial court further stated that "there are five counts in the complaint and [MT has] to present evidence sufficient to meet those counts by the requisite burden of proof and the defendant[s] can argue that [MT] did not meet

20

that burden of proof."  The defendants suggested that the trial court certify an interlocutory appeal pursuant to Code § 8.01-670.1.  The trial court declined the request.  At that time, the trial court had not made a ruling withdrawing the issue of liability from the jury.

At the conclusion of the evidence, the trial court informed the attorneys of the instructions it intended to give and those it did not intend to give to the jury.  The defendants made no objections at this time.  The trial court then called the jury back into the courtroom.

In reading the instructions to the jury, the trial court stated:

> The issues in this case are, number one, the amount of damages proximately caused from plaintiff's claim of the individual defendants' tortious interference with its business expectancy; number two, the amount of damages proximately caused from plaintiff's claim of the individual defendants' tortious interference with its agreements with John Magno and Laser Energetics, Incorporated; number three, the amount of damages proximately caused from plaintiff's claim of the individual defendants' tortious interference with its business expectancy and the relationship between John Magno and Ronald Trice; number four, the amount of damages proximately caused from Cristol's breach of its equipment lease with plaintiff; number five, the amount of damages proximately caused from plaintiff's claim of the defendants' conspiracy to injure plaintiff in its trade, business, profession or occupation.

(Emphasis added.)  The defendants did not object to this instruction.

Moreover, the verdict form did not ask the jury to consider liability; rather, it only asked the jury to fix the amount of MT's damages.  Specifically, the trial court stated:

> The final instruction is the jury verdict form that must be signed by the foreperson when the jury has reached a unanimous verdict.  It reads as follows.  We, the jury, on the issues joined, find in favor of the plaintiff against the following defendants and award damages as indicated.  Cristol, LLC compensatory; Koichi Fukuda, compensatory blank, punitive blank, total; Andrew Miller compensatory blank, punitive blank, total blank; Bruce Nolte compensatory, punitive, total; Gregory Koenig compensatory, total.  We, on the issues joined find in favor of the plaintiff.  Signed by the foreperson.

Again, the defendants did not object to the trial court's instruction.  The trial court then stated that "the jury is now ready for closing argument."

After closing arguments and after the jury returned a verdict for MT, the trial court informed the attorneys of the timeline for filing post-trial motions.  The defendants then stated, "[w]e'll just note our objections for the record, Your Honor, and the substance will be in the post-verdict motions."  Significantly, however, the defendants did not object at trial to the trial court's ruling submitting only the issue of damages to the jury.

22

In oral argument before the Court, counsel conceded that the defendants did not object to the trial court's withdrawal of liability from the jury's consideration until after the jury returned its verdict.  Nonetheless, defendants maintain that the assignment of error was preserved because "it was raised at a time in which the trial court still had the ability to do something about it."

We have previously stated:

> The purpose of Rule 5:25 is to give the trial court an opportunity to rule on a matter with knowledge of the substance of a party's objection, in order to avoid needless mistrials, reversals, and appeals. Generally, the reasons for objecting to the grant or refusal of a jury instruction must be presented to the trial court before such objection will be considered on appeal.  <u>The objection must be made in the trial court when the instruction is tendered</u>.

Morgen Indus. v. Vaughan, 252 Va. 60, 67-68, 471 S.E.2d 489, 493 (1996) (internal citations omitted) (emphasis added). Because the defendants first objected to the trial court withdrawing the issue of liability from the jury in a "Motion To Set Aside Verdict And For New Trial" on January 5, 2011, which was 15 days after the trial court instructed the jury, we hold that this assignment of error is barred by Rule 5:25 because the defendants did not state their objection to the trial court's ruling "with reasonable certainty at the time of the ruling."  Rule 5:25.

23

Because we hold that the trial court abused its discretion by forbidding cross-examination of witnesses regarding damages, we will reverse and remand the judgment of the trial court for further proceedings. Because of the posture of this case, it is unnecessary to address defendants' assignment of error regarding trebling of damages for statutory conspiracy.

### III. Conclusion

We will reverse the judgment of the trial court in part and remand the case for further proceedings on damages only. At such hearing, the issue of damages for statutory conspiracy and tortious interference shall be tried and the defendants will be permitted the opportunity to cross-examine witnesses and introduce evidence addressing the amount of damages to be recovered by plaintiff. However, because the trial court's imposition of a Rule 4:12(b)(2)(B) sanction is affirmed, on remand the defendants may not challenge their liability for recovery of any damages that are found by the trier of fact on the claims presented in counts I through V of the amended complaint.

<u>Affirmed in part,
reversed in part,
and remanded.</u>

JUSTICE POWELL, concurring in part and dissenting in part.

24

I agree with the majority's holding that the trial court abused its discretion in prohibiting the defendants from cross-examining or introducing evidence regarding the quantum of damages. While I also recognize that Rule 4:12(b)(2)(B) allows the trial court to refuse to allow a disobedient party to support or oppose designated claims or defenses, the Rule must yield to the right of basic cross-examination. Thus, I write separately to emphasize the well-established principle that cross-examination of adverse witnesses is an absolute right.

Although the trial court would allow the defendants to cross-examine MT's witnesses, it limited such cross-examination to only offering evidence in support of MT. In other words, it refused to allow the defendants to test the prejudice or bias of any of MT's witnesses. Clearly, such limitation was prejudicial to the defendants and their already meager case.

Furthermore, it should be noted that the trial court's sanction applied to both aspects of the case, liability and damages. Although the majority recognizes that the trial court's sanctions were a lesser sanction than default judgment and that the trial court compounded the impact of its sanction ruling, the majority limits its holding strictly to the issue of damages. In other words, the majority ignores the fact that the defendants were not able to cross-examine MT's witnesses on the issue of liability. The majority offers Rule 3:19(c)(3) as

25

an example of the fact that cross-examination is allowed "even in the case of a default judgment." The majority subsequently notes that there was no default judgment in this case, but then inexplicably applies Rule 3:19(c), which only applies to default judgment, to allow cross-examination on only the issue of damages. Thus, the majority interprets the same sanction in two different ways: with regard to liability, as only requiring MT to present unopposed prima facie evidence; with regard to damages, as only striking the defendants' affirmative defenses.

On day two of the trial, the trial court removed the issue of liability from the jury. In so doing, the trial court specifically stated:

> The plaintiff still has to establish all of the elements and the plaintiff still has the burden of proof. Whether it's preponderance, whether it's clear and convincing, the plaintiff obviously has the burden of proof, and the defendant can move to strike the plaintiff's evidence after the plaintiff presents that evidence and the Court will rule on the motion to strike . . . .
>
> . . . .
>
> [T]o the extent there are five counts in the [complaint] and those counts are statutory conspiracy, three tortious interference counts and one breach of contract or unjust enrichment count, <u>the plaintiff does have to present evidence sufficient to meet those counts by the requisite burden of proof</u> and the defendant can argue that the plaintiff did not meet that burden of proof.

(Emphasis added).

Clearly, the plaintiff was still required to prove liability. The fact that the trial court was deciding the issue of liability is not the same thing as granting default judgment on the issue of liability.

> For two centuries past, the policy of the Anglo-American system of evidence has been to regard the necessity of testing by cross-examination as a vital feature of the law. The belief that no safeguard for testing the value of human statements is comparable to that furnished by cross-examination, and the conviction that no statement (unless by special exception) should be used as testimony until it has been probed and sublimated by that test, has found increasing strength in lengthening experience.

5 Wigmore on Evidence § 1367, at 32 (James H. Chadbourn ed., rev. ed. 1974).

Recognizing the important function cross-examination serves, the United States Supreme Court has stated that "[i]n almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses." Goldberg v. Kelly, 397 U.S. 254, 263 (1970). Similarly, this Court has recognized that "cross-examination on a matter relevant to the litigation and put in issue by an adversary's witness during a judicial investigation is not a privilege but an absolute right." Basham v. Terry, 199 Va. 817, 824, 102 S.E.2d 285, 290 (1958) (citations omitted) (emphasis added). "Although the court has discretion to control the manner and scope of cross-

27

examination[], it is only after the right of cross-examination has been 'substantially and fairly exercised' that the allowance or disallowance of further cross-examination becomes discretionary."  Charles E. Friend, The Law of Evidence in Virginia 112 (6th ed. 2003) (emphasis added).  "The justification for an absolute right is that a rule in the converse would be prejudicial to the party denied the right of cross-examination."  Food Lion, Inc. v. Cox, 257 Va. 449, 450, 513 S.E.2d 860, 861 (1999).

This Court has previously explained that where an absolute right is denied, there can be no exceptions and we must reverse and remand the judgment below and remand the case for a new trial on all issues.  Id. at 450-51, 513 S.E.2d at 861 ("The right violated by that ruling is absolute; the adjective 'absolute' definitively excludes exceptions."); see also State Highway & Transp. Comm'r v. Cantrell, 223 Va. 185, 187, 288 S.E.2d 435, 436 (1982).  Furthermore, "[t]he bias of a witness is always a relevant subject of inquiry when confined to ascertaining previous relationship, feeling and conduct of the witness."  Henning v. Thomas, 235 Va. 181, 188, 366 S.E.2d 109, 113 (1988) (quoting Henson v. Commonwealth, 165 Va. 821, 825-26, 183 S.E. 435, 437 (1936)) (emphasis added).  The prejudice of a witness is a similarly relevant subject of inquiry.  Id.

("The bias of a witness, like prejudice and relationship, is not a collateral matter." (emphasis omitted)).

It is undisputed that the defendants were denied their absolute right to cross-examine MT's witnesses in all aspects of this case.  While I also recognize that the trial court could have rendered default judgment on the issue of liability and foregone the presentation of evidence on that issue, because the trial court did not actually enter default judgment, its ban on cross-examination was an abuse of discretion.  See Landrum v. Chippenham & Johnston-Willis Hosps., Inc., 282 Va. 346, 352, 717 S.E.2d 134, 137 (2011). Accordingly, I would reverse the trial court and remand the matter for a new trial on both liability and damages.