COURT OF APPEALS OF VIRGINIA

Present: Judges Beales, Causey and White

SANISTAFF, LLC, ET AL.

                                      MEMORANDUM OPINION[*] BY
v.       Record No. 0498-24-4           JUDGE DORIS HENDERSON CAUSEY
                                          JANUARY 27, 2026

THOMAS PRYKANOWSKI

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Randy I. Bellows, Judge

(Gregory M. Lipper; Roya Vasseghi; Erin N. Schiffman; LeGrand
Law PLLC; Vasseghi Law Group, on briefs), for appellants.[1]

(John D. Perry; Mariam W. Tadros; Womble Bond Dickenson (US)
LLP, on brief), for appellee.

Sanistaff, LLC and Gravy Staff, Inc. (collectively, Sanistaff) hired Thomas Prykanowski

as a commission-based salesman. Later, Sanistaff wanted to reduce Prykanowski's rate; after

negotiations, Prykanowski agreed to a reduced commission rate in exchange for an equity

interest in Gravy Staff.[2] Sanistaff reduced Prykanowski's commission rate but failed to provide

the equity interest. Prykanowski sued for breach of contract, fraud, and conversion. The jury

awarded a total of $676,140.10 in damages, including $350,000 in punitive damages.

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Appellant's motion for leave to file an amended reply brief is granted, and the same,
filed on August 21, 2024, is considered timely.

[2] Prykanowski's initial complaint characterized the proposed reduction in commission as
"equity in Gravy Staff." The record reveals that the equity consisted of "an equity position" in a
"franchising entity" that would turn "Gravy Staff, the staffing arm . . . into a franchise
company."

On appeal, Sanistaff argues that Prykanowski's claim was not supported by clear and convincing evidence. Sanistaff asserts that the trial court's ruling was based "solely on the alleged agreement to reduce commissions in exchange for a partnership in a hypothetical, ill-defined franchising enterprise." Sanistaff further argues that the punitive award was disproportionate to the actual damages sustained and that Prykanowski made improper closing arguments.

Viewing the evidence in the light most favorable to Prykanowski,[3] the trial court's verdict is supported by the record, the punitive damages award is not excessive, and Sanistaff's remaining arguments are not preserved for appellate review. Accordingly, having reviewed the record, we find no reversible error. Therefore, we affirm the trial court's judgment.[4]

BACKGROUND

In March 2021, Prykanowski entered into a "Representative Agreement" with Sanistaff, to "market, promote, and sell Sanistaff's commercial cleaning and sanitization services to commercial and residential applications" in the District of Columbia. In exchange, Prykanowski would be paid "25% of the new proceeds for completed sales." Prykanowski secured a 60-day emergency contract on Sanistaff's behalf with the District of Columbia Office of Contracting and Procurement (DC). Because of Prykanowski's efforts, DC renewed and extended the contract. David Biel, a financial analyst for Gravy Staff, testified that the DC contract was "the most significant" for Sanistaff.

---

[3] "In accordance with familiar principles of appellate review, we view the facts in the light most favorable to [Prykanowski], as the prevailing party below." *Price v. Peek*, 72 Va. App. 640, 644 n.1 (2020).

[4] After examining the briefs and record in this case, the panel unanimously agrees that oral argument is unnecessary because "the dispositive issue or issues have been authoritatively decided, and the appellant has not argued that the case law should be overturned, extended, modified, or reversed." Code § 17.1-403(ii)(b); Rule 5A:27(b).

After the DC contract was renewed, Alex Atwood, Sanistaff's representative,[5] "wanted to renegotiate the amount of commissions that [Prykanowski] was being paid." Prykanowski was making "quite a bit" more money than Atwood. Atwood further testified that Sanistaff had expected the DC contract to be short-term, so due to the renewals and extensions "the amount of work [Prykanowsi] was doing wasn't balanced with the amount of money he was receiving." During the renegotiation, Atwood asked Prykanowski to reduce his commission. Prykanowski declined, stating that he would not accept an "arbitrary 60 percent cut in pay."

Later, Atwood attempted to renegotiate Prykanowski's contract a second time. According to Prykanowski, in exchange for the reduction in his commission rate he would receive "an equity position" in a "franchising entity" that would turn "Gravy Staff, the staffing arm . . . into a franchise company."[6] Atwood forwarded documents to Prykanowski relating to the creation of a franchise.[7] Prykanowski further testified that Atwood sent an email to an investor, introducing Prykanowski as "leading [their] franchise program." Atwood agreed that he did not take any affirmative steps to provide Prykanowski with an equity position in the franchising entity.

Pursuant to the renegotiated commission contract, from October 2021 to May or June 2022, Prykanowski submitted "profit and loss statements" to Sanistaff claiming commissions at a rate ranging between 10% and 21%, instead of 25%. Atwood reviewed and approved those

---

[5] Prykanowski's complaint represents that Alex Atwood is listed as the registered agent and "Member or Manager" of Sanistaff, LLC, and the registered agent and Officer of Gravy Staff, Inc.

[6] Atwood contends that he did not offer Prykanowski equity in a franchising opportunity, but reduced Prykanowski's commissions because Prykanowski was "working full-time elsewhere."

[7] The documents shared with Prykanowski included (1) an initial agreement with proposed franchise consultant John Hayes; (2) the "Franchise Plan Narrative April 13 Gravy Work" prepared by Hayes; and (3) an investor pitch deck titled "gravy Investor Overview."

forms. Prykanowski thought that the "reduction in the commissions [would] go into building the company [they] were going to [make]" and that he was "investing in that enterprise . . . through [his] reduced commission."

In August 2022, Prykanowski attempted to check his work email while on vacation but could not access it. Prykanowski called Atwood, who said that Prykanowski owed him money and that Sanistaff was terminating Prykanowski's work contract. Citing the fluctuating commission rate, Sanistaff did not pay Prykanowski for July or August.

Prykanowski filed a complaint for breach of contract, fraud, and conversion. Sanistaff counterclaimed, asserting breach of contract and fraud in the inducement. The counterclaims alleged that Prykanowski "fail[ed] to perform the services that he promised to provide" and that "Prykanowski intentionally and knowingly misrepresented the time and attention that he would devote to Sanistaff."

At trial, Atwood agreed that he "never sought approval of the board of directors" for the franchise, "never had any documents drawn up," and "never took any affirmative steps to provide equity to . . . Prykanowski." Atwood also affirmed that he double-billed Prykanowski for health insurance and dental premiums because "the way [he] saw it, there was a substantial amount of money that [Prykanowski] owed back to the company." Sanistaff deducted twice the cost of Prykanowski's premiums for approximately ten months. Despite Atwood stating that he would "look into it" when Prykanowski brought up the extra deductions, Prykanowski was never reimbursed.

The jury found Sanistaff liable for breach of contract, fraud, and conversion and awarded Prykanowski $272,405.11 in compensatory damages, $350,000 in punitive damages, and $53,374.99 in attorney fees. Sanistaff's subsequent motion for a new trial and to set aside the jury verdict was denied.

On appeal, Sanistaff argues that the evidence was insufficient to support Prykanowski's claim for fraud because it (1) was "insufficient to establish . . . that Atwood made promises that he did not intend to keep" and (2) failed to demonstrate "that Prykanowski's reliance was reasonable." Sanistaff admits that they did not move to strike at the conclusion of all trial evidence but maintains that it preserved its arguments in its motion to set aside the jury's verdict. Next, Sanistaff argues that the punitive damages award must be overturned because (1) there were legal deficiencies undermining the fraud claim and (2) awarding $350,000—the statutory-maximum amount—was "excessive." Finally, Sanistaff argues that the trial court erred by allowing Prykanowski to "engage in improper closing argument" when he (1) misstated the evidence, law, and jury instructions, (2) relied on arguments and evidence that he had "disavowed," and (3) argued based on Atwood's "alleged propensity to commit fraud."

## ANALYSIS

### I. Sufficiency of Evidence

#### A. Reasonable Reliance

"No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Rule 5A:18. "The purpose of th[e] contemporaneous objection requirement [in Rule 5A:18] is to allow the trial court a fair opportunity to resolve the issue at trial, thereby preventing unnecessary appeals and retrials." *Hogle v. Commonwealth*, 75 Va. App. 743, 755 (2022) (alterations in original) (quoting *Creamer v. Commonwealth*, 64 Va. App. 185, 195 (2015)). The objection "must be both specific and timely—so that the trial judge would know the particular point being made in time to do something about it." *Id.* (quoting *Bethea v. Commonwealth*, 297 Va. 730, 743 (2019)). "If a

party fails to timely and specifically object, he waives his argument on appeal." *Id.* (citing *Arrington v. Commonwealth*, 53 Va. App. 635, 641 (2009)).

Although "a motion to strike made during trial is an appropriate method of testing the sufficiency of the evidence, a party may also challenge the sufficiency of the evidence by a motion to set aside the verdict." *SuperValu, Inc. v. Johnson*, 276 Va. 356, 369 (2008) (citing *Little v. Cooke*, 274 Va. 697, 718 (2007)). "Either approach is acceptable, because in both instances the trial judge is presented with the same question of law, whether the evidence is sufficient to support a jury verdict on the claim alleged." *Id.*

Here, Sanistaff's motion to set aside the jury's verdict did not contend that the evidence was insufficient because Prykanowski did not reasonably rely on Atwood's promises. Yet in its reply brief, Sanistaff contends that Prykanowski's "reliance was vigorously contested at trial, including during each party's closing arguments." But generally contesting an element at trial, including during closing arguments before a *jury*, does not preserve for appeal an argument that the evidence was insufficient to prove that element as a matter of law. *Campbell v. Commonwealth*, 12 Va. App. 476, 481 (1991) (en banc) (stating that "in a jury trial, the closing argument is addressed to the jury, not the trial judge, and does not require the trial judge to rule on the evidence as a matter of law"). Thus, Sanistaff's reasonable reliance argument is not preserved. Although Rule 5A:18 has exceptions, Sanistaff did not invoke them in its opening brief, and we will not do so sua sponte. *Spanos v. Taylor*, 76 Va. App. 810, 827-28 (2023) (citing *Edwards v. Commonwealth*, 41 Va. App. 752, 761 (2003) (en banc)).

## B. Intent

Under "Code § 8.01-680, the standard of review for determining the sufficiency of the evidence on appeal is well established." *Sidya v. World Telecom Exch. Commc'ns, LLC*, 301 Va. 31, 37 (2022) (quoting *Nolte v. MT Tech. Enters., LLC*, 284 Va. 80, 90 (2012)). "The reviewing

court must examine the evidence in the light most favorable to . . . the prevailing party at trial, and the trial court's judgment will not be disturbed unless it is plainly wrong or without evidence to support it." *Id.* (alteration in original) (quoting *Nolte*, 284 Va. at 90). "When the law says that it is for the jury to judge . . . the credibility of a witness, it is not a matter of degree." *Id.* (quoting *Simpson v. Commonwealth*, 199 Va. 549, 557 (1957)).

"[A] litigant who prosecutes a cause of action for actual fraud must prove by clear and convincing evidence: (1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled." *State Farm Mut. Auto. Ins. Co. v. Remley*, 270 Va. 209, 218 (2005) (quoting *Prospect Dev. Co. v. Bershader*, 258 Va. 75, 85 (1999)). Here, the question is whether Prykanowski proved by clear and convincing evidence that Atwood never intended to fulfill his side of the deal in providing equity to Prykanowski in exchange for his reduced commission rate. Viewing the evidence in the light most favorable to Prykanowski, we find that Prykanowski met his burden.

"To determine whether fraudulent intent exists, the Court must 'look to the conduct and representations of the defendant.'" *Rader v. Commonwealth*, 15 Va. App. 325, 329 (1992) (quoting *Norman v. Commonwealth*, 2 Va. App. 518, 519 (1986)). "Intent may, and most often must, be proven by circumstantial evidence and the reasonable inferences to be drawn from proven facts are within the province of the trier of fact." *Northcraft v. Commonwealth*, 78 Va. App. 563, 597 (2023) (quoting *Sarka v. Commonwealth*, 73 Va. App. 56, 67 (2021)). "[I]f a defendant makes a promise that, when made, he has no intention of performing, that promise is considered a misrepresentation of present fact and may form the basis for a claim of actual fraud." *Radiance Cap. Receivables Fourteen, LLC v. Foster*, 298 Va. 14, 23-24 (2019) (alteration in original) (quoting *SuperValu*, 276 Va. at 368). "In such cases, 'the promisor's

intention—his state of mind—is a matter of fact.'" *Id.* at 24 (quoting *Colonial Ford Truck Sales, Inc. v. Schneider*, 228 Va. 671, 677 (1985)). We have held that the use of false statements is a "significant factor" in finding fraudulent intent. *Rader*, 15 Va. App. at 330; *see also Abi-Najm v. Concord Condo., LLC*, 280 Va. 350, 363 (2010) (stating that false representation of promise with a 'present intention not to perform' was fraudulent intent). We have further held that lack of communication and overall conduct also can evidence fraudulent intent. *Rader*, 15 Va. App. at 330.

Viewing the record in the light most favorable to the prevailing party, here Prykanowski, we find that the evidence was sufficient to demonstrate fraud. In its argument for insufficient evidence as to "fraudulent intent," Sanistaff almost solely relies on Prykanowski's testimony that he would "have to think" about whether Sanistaff "never intended to keep the promise." But what Prykanowski personally believed is not dispositive of the legal question of whether the evidence he presented, viewed in the light most favorable to him, was sufficient to support the jury's finding of fraud.

As noted above, Atwood's actions and statements are more probative of that question, and they were sufficient to support the conclusion that he did not intend to provide Prykanowski with equity *at the time* he offered to do so in exchange for Prykanowski lowering his commission. Indeed, Atwood offered Prykanowski equity in a franchise only after he initially refused to lower his commission, and Atwood admitted at trial that he had taken no steps to set up the promised equity. Putting on a front, he provided Prykanowski with documents addressing the franchise, but he "never sought approval of the board of directors" for the franchise and "never had any documents drawn up."

A reasonable factfinder could conclude from the record that Atwood's actions were motivated not by a desire to provide Prykanowski with the promised equity, but rather by the

- 8 -

belief that Prykanowski was making too much money—indeed, more money than even Atwood himself. There was evidence that this circumstance not only motivated Atwood to seek to renegotiate Prykanowski's contract, but also compelled him to double charge Prykanowski for his insurance premiums. When Prykanowski raised the matter, Atwood said he would remedy the extra charges, but he never did and admitted that he never intended to do so. Similarly, Atwood said he would provide Prykanowski with equity in a franchise in exchange for a lower commission, but the record supports the jury's conclusion that he never intended to do that either. Thus, the above is sufficient to provide a basis for the jury's finding of fraudulent intent.

### C. Punitive Damages[8]

"[P]unitive damages are intended to punish the wrongdoer and deter future misconduct." *Nestler v. Scarabelli*, 77 Va. App. 440, 465 (2023). Therefore, "we give jury verdicts and jury damage awards 'the utmost deference.'" *Id.* (quoting *21st Century Sys. v. Perot Sys. Gov't Servs.*, 284 Va. 32, 41 (2012)). This is particularly so when the trial court has approved the award. *Id.* at 462. "Punitive damages are subject to 'the jury's discretion because there is no set standard for determining the amount of punitive damages.'" *Id.* (quoting *Coalson v. Canchola*, 287 Va. 242, 249 (2014)). "Unless the award 'is so excessive as to shock the conscience . . . or to create the impression that the jury was influenced by passion or prejudice, a verdict approved by the trial court will not be disturbed on appeal.'" *Id.* (alteration in original) (quoting *Gazette, Inc. v. Harris*, 229 Va. 1, 41 (1985)).

On review of the record, we do not find that the jury was swayed by passion, prejudice, or corruption. Highlighting the actions of Atwood, he double billed for insurance premiums and even stated that he had no intention of providing a refund based on this overcharging. Despite knowing

---

[8] Because we find sufficient evidence to support the jury's fraud verdict, we reject Sanistaff's argument that the punitive damages award must be overturned because there was insufficient evidence of fraud.

that this was occurring for several months, Atwood did nothing to remedy this inequity. Additionally, Atwood approved internal documentation reducing Prykanowski's commission rate without ever intending to bring Prykanowski on as a franchise partner.

Additionally, even if that was not the case, we have held that punitive damage awards twenty-seven times in excess of compensatory damages against a defendant were not excessive. See *Flippo v. CSC Assocs. III, L.L.C.*, 262 Va. 48, 55 (2001). Here, the proportionality between the compensatory and punitive damages is not inherently unreasonable, and the award aligns with the purpose to punish and deter. Thus, finding that the award was not "so excessive" as our precedents dictate, we affirm.

II. Closing Arguments[9]

Finally, Sanistaff contends that Prykanowski's counsel "misled the jury" during closing argument "about the evidence and instructions, and rel[ied] on arguments and evidence that she had specifically disavowed before the trial court." But Sanistaff did not raise an objection during Prykanowski's closing argument.

As noted above, "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Rule 5A:18. For an objection to be timely, it must be "made when the occasion arises—at the time the evidence is offered or the statement made." *Marlowe v. Commonwealth*, 2 Va. App. 619, 621 (1986). The trial court must be "in a position, not only to consider the asserted error, but also to rectify the effect of the asserted error." *Maxwell v. Commonwealth*, 287 Va. 258, 265 (2014) (quoting *Scialdone v. Commonwealth*, 279 Va. 422, 437 (2010)). When a party waits until after the jury

---

[9] Prykanowski's motion to "strike" Sanistaff's third assignment of error is denied.

retires to make an objection to allegedly improper remarks during closing argument, the objection is untimely and not sufficient to preserve the argument for appeal. *Id.* at 267-69.

Here, Sanistaff did not object to the allegedly improper closing argument at the time the statements were made. Instead, it waited until its motion to set aside the jury's verdict. Notwithstanding that defect, Sanistaff argues its failure to object should be excused because it would not have been "obviously apparent" that the statements were objectionable in "the heat of closing arguments." We disagree. The only two exceptions to Sanistaff's obligation to raise its argument when the objectionable statements were made was for good cause or to reach the ends of justice. Again, Sanistaff invokes neither exception, nor will this Court do so sua sponte. *Spanos*, 76 Va. App. at 827-28 (citing *Edwards*, 41 Va. App. at 761).

CONCLUSION

For the foregoing reasons, the trial court's judgment is affirmed.

*Affirmed.*